LAWRENCE and another *against* The STONINGTON BANK.

As between the original parties to a bill of exchange, the want of consideration, total or partial, may be shewn ; and though a subsequent holder, *bona fide*, and for value paid, shall not be affected, by a want of consideration between the prior parties, yet if he received the bill without consideration, he is in privity with the first holder, and the want of consideration is equally provable and available against him.

Therefore, where the plaintiff, residing in *New-York,* having drawn a bill on a person in *Stonington* in this state, payable to his own order, indorsed it in blank, and lodged it in a bank in *New-York* for collection ; the cashier of that bank indorsed it in blank, and forwarded it to the *Eagle Bank* at *New-Haven ;* the cashier of the latter bank indorsed it, in the same manner, and transmitted it to the *Stonington Bank*, each of these indorsements being made for the purpose of collection only ; the acceptor paid the amount of the bill to the *Stonington Bank ;* and in an action brought by the drawer, against this bank, to recover the sum so paid, as money received by the defendant to the plaintiff's use, it was held, that parol evidence was admissible to shew the nature of the indorsements, and the purpose for which they were made. .

In such case, the successive indorsees were merely agents of the drawer, for the collection and transmission of his money.

In such case, the *Stonington Bank* was not the factor or banker of the *Eagle Bank ;* nor had the *Stonington Bank*, as agent, or in any other capacity, a lien on the avails of the bill, for the general balance of its account with the *Eagle Bank*, by virtue of which it was entitled to set off such avails against such balance.

A custom among banks of transmitting bills and notes from each to the other for collection, and when paid, of passing the avails to the credit of the bank so transmitting them, and to the debt of the bank so receiving them, cannot affect the claim of a third person to the avails of a bill, which he has committed to one of them for collection.

This was an action of *assumpsit* to recover of the defendants the avails of a certain inland bill of exchange, alleged to have been received by the defendants, for the use of the plaintiffs.

The cause was tried at *Norwich, January* term, 1827, before *Daggett, J.*

The plaintiffs, residing in the city of *New-York,* on the 2nd of *September,* 1825, drew a bill of exchange for 156 dollars,

*New-London,*
*July,*
*1827.*

*Lawrence*
*v.*
*Stonington*
*Bank.*

on *Peleg Denison* of *Stonington*, who was indebted to the plaintiffs in that amount, payable to their own order, twenty days after date; and, for the purpose of collection only, indorsed it in blank, and lodged it in the *Phœnix Bank* of *New-York*. The cashier of this bank indorsed the bill in blank, and sent it to the *Eagle Bank* of *New-Haven*, for collection; and the cashier of the latter bank indorsed it in blank, and sent it to the defendants for collection. No consideration was paid, by either of the banks; and they had no interest in the bill, except to collect and remit the avails. On the 20th of *September*, the defendants had knowledge of the failure of the *Eagle Bank;* which was indebted to them in the sum of 60 dollars, and of whose bills they had 180 dollars in possession. On the 25th of *September*, on the presentment of the cashier, the amount of the bill was paid, by *Denison*, to the defendants, and was, by them, credited to the *Eagle Bank*. On the 30th of the same month, the plaintiffs drew for the money, and likewise presented an order for it from the *Eagle Bank;* and the defendants refused payment. It was not known, by the defendants, that the bill was the plaintiffs' property; nor that it was not the property of the *Eagle Bank*, except so far as it might be inferred from the indorsements, and a letter from the cashier of the *Eagle Bank*, informing them, that it was transmitted for collection. A custom or usage had, for a long time, existed in the banks of this state and the city of *New-York*, of transmitting bills of exchange and promissory notes from each to the other for collection, and when paid, of passing them to the credit of the bank so transmitting them, and to the debt of the bank so receiving them, in their accounts with each other.

To prove these facts, parol testimony was introduced, to the competency of which the defendants objected; but the judge, in his charge, decided, that such evidence was admissible; and there being no question as to the sufficiency of the evidence, if admissible, the judge directed the jury to find a verdict for the plaintiffs; which they accordingly did. The defendants thereupon moved for a new trial, for a misdirection.

*Goddard* and *Billings*, in support of the motion, contended, 1. That in the absence of all fraud, and in the absence of any knowledge of the plaintiffs' title, when the defendants applied this money to pay their debt from the *Eagle Bank*, it was not competent for the plaintiffs to prove, by parol, that the several

indorsements on the bill, were made *without any consideration.*
If there are cases, which go to shew, that as between the orig-
inal parties to a bill, this enquiry can be made, (which has been
doubted) yet as between *these parties*, this is inadmissible.

*New-London,*
July,
1827.

Lawrence
*v.*
Stonington
Bank.

2. That upon the facts disclosed, the plaintiffs were not en-
titled to recover, for several reasons.

First, as between two innocent parties, he who has given the
confidence, and enabled one person to affect the rights of anoth-
er, ought to bear the loss. The plaintiffs have sent the bill into
the world, payable to order, and have enabled the *Eagle Bank*
to place the avails of it to its credit on the books of the *Ston-
ington Bank.* The indorsement should have been *restrictive.*
*Featherstone* v. *Hunt* & al. 1 *Barn. & Cres.* 113. In that case,
*Bayley,* J. said : "If I, incautiously, by putting a security for a
debt due to me into the hands of a third person, enable that per-
son to deceive my debtor, in the settlement of an account between
them, I must take the consequences." In *Goupy* & al: v. *Harden*
& al. 1 *Holt* 342. where the defendants, acting as agents for the
plaintiffs, not on a *del credere*, but for a small commission, and
being requested to remit bills, did so, and indorsed them with-
out qualification, it was held, that they could not protect them-
selves from liability, on the ground that they acted as agents ;
for, as *Gibbs*, Ch. J. said, when the plaintiffs read the names of
the defendants upon these bills as indorsers, they had a right to
consider, that they intended to make themselves liable as prin-
cipals. In *Edie* & al. v. *East India Company*, 2 *Burr.* 1221, 2.
Lord *Mansfield* told the jury, that it ought to be considered by
them, who it was that gave the trust to *Ogilby*, the first indor-
see ; for he that gives the trust, ought to run the risk of his cre-
dit. In the same case, *p.* 1226. *Wilmot,* J. said, there was a
great difference between giving a naked authority to receive
money, and transferring by indorsement. In the former case,
he added, (*p.* 1227.) the person giving the authority must use
such expressions as necessarily import, that he does not mean
to indorse the paper over, but is only authorizing a particular
person to receive the money for him, and for his own use.

The defendants being the *bona fide* holders of this bill, can
avail themselves of these principles. They received it, in the
ordinary course of their business, from the *Eagle Bank*, as the
property of that bank, accompanied with just such a letter as
all other bills were sent with. The letter told them, indeed,
that the bill was *for collection ;*—but for whom ? Not the *Phœ-*

*New-London,*
*July,*
*1827.*

Lawrence
*v.*
Stonington
Bank.

*nix Bank :* the bill proved the contrary. Not the plaintiffs: the bill proved the contrary. But to their order—on the bill itself—to the *Eagle Bank.* According to the common and usual course of business, was not this money *paid* to the *Eagle Bank,* by being passed to their credit?

Secondly, the defendants, as *factors* of the *Eagle Bank,* having a lien for the general balance of their account, are entitled to set off their demand against the *Eagle Bank. Rabone* v. *Williams,* cor. Lord *Mansfield,* in 1785. 7 *Term Rep.* 360. n. *George* v. *Claggett* & al. 2 *Esp. Rep.* 557. *Campbell* & al. v. *Hassel* & al. 1 *Stark Rep.* 233. *Lickbarrow* & al. v. *Mason* & al. 6 *East* 21. 23, 4, 5. *Drinkwater* & al. v. *Goodwin, Cowp.* 251. 254, 5 6.

Thirdly, the defendants, as *bankers,* have a lien for a general balance, and therefore a right of set-off. *Jourdaine* v. *Lefevre,* 1 *Esp. Rep.* 66. *Davis & al.* v. *Bowsher,* 5 *Term Rep.* 488.

Lastly, if the defendants acted as *agents merely* to collect the money, they would have a lien upon it, until their debt should be paid. *Barker* v. *Prentiss,* 6 *Mass. Rep.* 430. *Savill* v. *Barchard* & al. 4 *Esp. Rep.* 53.

*Isham,* contra, insisted, 1. That notwithstanding the indorsements upon the bill, parol evidence was admissible to shew, that it was the property of the plaintiffs. First, the indorsements were still in blank: and such an indorsement does not transfer the property, without some further act. *Clark* v. *Pigot,* 1 *Salk.* 126. S. C. 12 *Mod.* 102. *Lambert* v. *Pack,* 1 *Salk.* 128. *Lucas* v. *Haynes,* 1 *Salk.* 130. *Theed* v. *Lovell,* 2 *Stra.* 1103. *Dehers* & al. v. *Harriot,* 1 *Show.* 159. [163.] *Lovell* v. *Evertson,* 11 *Johns. R. p.* 52. *Burdick* v. *Green,* 15 *Johns. Rep.* 247. 249. *Harris* v. *Harris,* in superior court, *New-London* county, *January* term, 1822, cor. *Hosmer,* Ch. J. In the case last cited, the note being shewn on oyer, and recited in the plea, it appeared that the plaintiff's name was indorsed in blank ; and the defendant claimed, that the plaintiff could not recover. The plaintiff's counsel then filled the blank with a power to collect for his own use ; and the court sustained the suit. Secondly, the court will not only permit, but *require,* the plaintiff to prove a consideration, if suspicion has been cast on his title by the defendant. *Miller* v. *Race,* 3 *Burr.* 452. *Grant* v. *Vaughan,* 3 *Burr.* 1516. *Peacock* v. *Rhoades, Doug.* 633. *Macbride* v. *Woodruff,* 2 *Stark. Rep.* 253. Thirdly, in practice

this evidence has been always admitted. *Wookey* v. *Pole* & al. 4 *Barn.* & *Ald.*1. *Machell* v. *Kinnear*, 1 *Stark. Rep.* 499. *Collins* v. *Martin* & al. 1 *Bos.* & *Pull.* 648. *Herrick* v. *Carman*, 10 *Johns Rep.* 224. same parties, 12 *Johns. Rep.* 159. *Woodhull* v. *Holmes*, 10 *Johns. Rep.* 231. *Barker* v. *Prentiss*, 6 *Mass. Rep.* 430.

2. That the facts being established, by competent evidence, the defendants cannot hold the avails of the bill against the plaintiffs. First, the bill was never discounted; the plaintiffs never received any thing for it; and, of course, the defendants *paid no consideration for it.* This is indispensable to entitle them to the avails. *Miller* v. *Race*, 1 *Burr.* 452. *Grant* v. *Vaughan*, 3 *Burr.* 1516. *Peacock* v. *Rhoades*, *Doug.* 633.— *Collins* v. *Martin* & al. 1 *Bos.* & *Pull.* 648. *Lawson* & al. v. *Weston* & al. 4 *Esp. Rep.* 56. Secondly, the bill was sent for *acceptance* and *collection* only. *Denniston* v. *Bacon* & al. 10 *Johns. Rep.* 198. Thirdly, the defendants have suffered no injury; no new advances having been made, or responsibilities incurred, by them. *Buller* v. *Harrison*, *Cowp.* 565.

3. That the usage stated in the motion, will not authorize the defendants to retain the avails of the bill against the plaintiffs. In the first place, it does not appear, that the custom was general; on the contrary, it would seem to be confined to the banks in their intercourse with each other, and to a few only of them, *viz.* those in this state and the city of *New-York.* Secondly, it does not appear, that this custom was even *known* to the *plaintiffs.* Thirdly, the usage, as stated in the motion, does not change the interest in, or the ownership of, the bills or notes forwarded: it only warrants a credit of the amount, when collected.

HOSMER, Ch. J. Parol or simple contracts, in general, although in writing, will not be enforced, unless the plaintiff prove that they were made for a sufficient consideration. *Rann* & al. v. *Hughes*, 7 *Term Rep.* 350. n. But in respect to bills of exchange and promissory notes, the law is somewhat different.

It is an established rule, that in an action between the original parties to a bill or note, the consideration may be enquired into. *The People* v. *Howell*, 4 *Johns. Rep.* 296, 303. *Pearson* v. *Pearson*, 7 *Johns. Rep.* 26, 28. *Schoonmaker* v. *Roosa* & al. 17 *Johns. Rep.* 301. 304. *Chitt. Bills* 13. 5th *Lond.* ed. 2

HARVARD LAW LIBRARY

New-London,
July,
1827.

Lawrence
v.
Stonington
Bank.

*Phill. Ev.* 11.    And on the same principle, where the consideration is less than the amount of the bill or note, no recovery can be had beyond the sum actually paid.    *Bramin* v. *Hess,* 13 *Johns. Rep.* 52.    *Brown* v. *Mott,* 7 *Johns. Rep.* 361.    *Munn* v. *Commission Company,* 15 *Johns. Rep.* 44.    *Chitt. Bills* 91.    So if the holder claim by an indorsement *after* the note or bill has become due, or has taken it with a knowledge of fraud or other equitable circumstances, entitling the maker to avail himself of the defence, this is equally provable as a want or failure of consideration.    *Chitt. Bills* 89. & n. 16 & n.    1 *Johns. Dig.* 125.

If, however, an action is brought by the indorsee of a note, before it arrives to maturity, not void in its creation, *who has given value for it,* the consideration, in general, cannot be the subject of enquiry.

The diversity is founded in this; that to strengthen and facilitate commercial intercourse, which is carried on through the medium of this species of security, it is necessary that the fair holder of a bill *for value paid,* should not be affected, by a want of consideration between the prior parties    If, however, the holder of the bill receive it *without consideration,* then, as was justly said by *Eyre,* Ch. J. in *Collins* v. *Martin* & al. 1 *Bos. & Pull.* 651. "he is in privity with the first holder, and will be affected, by every thing which would affect him."

The determination in *Barker* v. *Prentiss,* 6 *Mass. Rep.* 430. on the ground of the preceding principles, runs the full length of the decision made by the superior court.    A bill was drawn on *Merrills,* payable to *F. G. Robinson* & *Co.,* and was by them indorsed in blank to *J. Taber* & *Son,* who indorsed the same to the plaintiff.    It appeared in evidence, in the action, brought by *Jacob Barker,* the last indorsee, against *William Prentiss,* the drawer, that the bill was sent to the *Tabers, for collection,* by *Robinson* & *Co.,* and by them was indorsed to the plaintiff, for the same purpose.    *Robinson* & *Co.* requested the defendant not to pay the bill to the plaintiff.    To the competency of the testimony there was an objection ; but the court adjudged, that notwithstanding the indorsements, it was admissible to prove, that the plaintiff received the bill, not as assignee, but as an agent to collect it for the payees.    To the same effect was the decision in *Hendrick* v. *Carman,* 10 *Johns. Rep.* 224.    In this case, it was adjudged, the above principles having been recognized, that in an action by the second indorsee of a promissory

note against his immediate indorser, it was competent for the defendant to prove, that the plaintiff had given no consideration for the note, but held it merely *as the agent of the payees,* to collect the amount for them, and of consequence, that he could not sustain his suit.   This case clearly proves, that the defendants had no right of recovery against the *Eagle Bank,* to whom they had paid no consideration.   They, however, repose themselves on the right of the *Eagle Bank* against the *Phœnix Bank ;* but here the same infirmity appears.   The *Eagle Bank* received the bill for collection only, as the *Phœnix Bank* had done before.

New-London,
July,
1827.

Lawrence
*v.*
Stonington
Bank.

I cannot but consider the attempt made by the defendants to be in direct perversion of the rule on which they have endeavoured to establish their case.   That rule was adopted to prevent fraud or hardship on indorsees, who had possessed themselves *bona fide* of a bill for *valuable consideration ;* but it was no part of its object to sanction a recovery in favour of those, who had paid nothing, and had no equitable title.

The defendants, to use the very appropriate expression of Ch. J. *Eyre,* were *in privity* with the *Phœnix Bank,* and the testimony, which was duly admitted, shews that they have no title to the avails of the bill.   All the indorsees were merely agents of the plaintiffs, for the collection and transmission of their money.

The preceding observations contain an answer to the defendants' position, that the indorsement should have been *restrictive,* and that they were *bona fide* holders.

They, however, claim a right of *set-off* against the *Eagle Bank ;* and a *lien* upon the money collected for the balance due to them.   The former proposition is virtually founded on the latter ; for independent of lien, there is neither law nor equity for taking the plaintiffs' property, and setting it off against the demands due from the *Eagle Bank.*

In the first place, the defendants insist, that as the *factors* of the *Eagle Bank,* they have a lien for the general balance of their account against them.

The answer is obvious, and without difficulty.   The defendants were in no sense the factors of the *Eagle Bank,* or of the plaintiffs.   A factor is a commercial agent, transacting the mercantile affairs of other men, in consideration of a fixed salary or certain commission, and principally, though not exclusively, in the buying and selling of goods. *Lex Merc. Amer.*

HARVARD LAW LIBRARY

New-London,
July,
1827.

Lawrence
v.
Stonington
Bank.

388.    But an attorney, and such was the *Stonington Bank*, who collects a note, bill or demand for another, is not a factor.    He is an agent of a different description ; and the law  concerning factors, is inapplicable to him.

It is next contended, that  the defendants, *as bankers*, have a right to retain in their hands the moneys of their  principal, by way of lien, for their general balance.

To this proposition there are two  insuperable  difficulties. The first of them is, that the *Eagle Bank* is not their principal ; but the plaintiffs, whose moneys they have collected,  stand peculiarly in this relation.   When the form  of the transaction is removed, and it is viewed in its essence, the *Eagle Bank* was merely the instrument of transmisssion,  and the bill was virtually delivered to the defendants, by the plaintiffs.

In the next place, the defendants,  in  their  transactions with the *Eagle Bank*, were not *bankers*, in the sense which our books affix to that term.

In *Jourdaine* v. *Lefevre & al. 1 Esp. Rep. 66.* it was said,  by Lord *Kenyon*, that a banker had   a  lien  on  a note  paid into his house, and of course, a right to retain it for his general balance.   The doctrine more  clearly  appears  from the case of *Davis & al. Bowsher, 5 Term Rep. 488.*    A  customer  lodges bills of exchange in the  hands  of  his banker generally,  and when the banker advances money to him, he applies it  to  the discount of such of the bills as happen  to  be  nearest  in value to the sum advanced, but without any special  agreement to that effect.    This does not invalidate the banker's general lien upon all the other bills in his hands, but he may retain them, in order to secure the  payment of his general balance.    These cases, and others to the same effect, are inappropriate to  the  one before us.    The transaction of sending notes for collection  from one bank to another, has no analogy to the  payment of  notes to a banker, and obtaining discount on  a  part of them.    Besides, it by no means follows,  that  the  same transaction, which, in *London*, would infer a lien, ought to have a  similar effect here. Liens are founded on express agreement between the parties in the particular instance ; upon the mode of  dealing between the same parties, in former instances ;  or on the general usage  and custom of  the particular trade.    *2 Stark. Ev. 883. 2 Phill. Ev. 123, 4, 5.*    Unless  there  has  been  either the  same mode of dealing between the parties here, as in the place  above  named, or a similar general usage or custom, what is law there,  is not, of course, law here, because the foundations are different.

I have been induced to make these observations, as the argument of the defendants seemed to imply, that all liens were as universal as the common law is.   On this principle, I presume, was cited the case of *Savill* v. *Barchard* & al. 4 *Esp. Rep.* 53. relative to the lien in favour of dyers, founded on the general course and practice of that particular trade.

The natural enquiry is, whether there has been a mode of dealing between the parties here, or a general usage and custom, that gives sanction to the asserted lien of the defendants in this case.   No such mode of dealing has been proved, and no such usage; even if a mode of dealing and an usage between the banks, known only to themselves, and regulating their intercourse with each other, could avail to deprive a person of claims confided to them for collection.   A man's property cannot thus be taken from him without his consent; and this assent cannot be implied, unless an usage has existed so long, and with such publicity, as to warrant the presumption, that it was generally known.   *Barber* v. *Brace* & al. 3 *Conn. Rep.* 9.

The custom of transmitting bills for collection from one bank to another, and crediting in account the avails received, whatever effect it may have between themselves, cannot affect the claims of a third person, who has confided the collection of a bill to one of them, without assent, either express or implied, to the mode of transacting their business; and no such assent is inferable in this case.

In conclusion, I would apply the expressions of Lord *Mansfield*, in *Buller* v. *Harrison, Cowp.* 565. 568   No new credit was given, no acceptance of new bills, no alteration in the situation which the defendants and the *Eagle Bank* stood in towards each other, after the failure, or collection of the money.   The defendants ought not to say, "this is a hit; we have got the money, and we will keep it."   The *Eagle Bank,* the defendants knew, was insolvent.   No prejudice has arisen to them from the collection of the bill; and in common honesty, they ought not to shelter themselves from loss, by casting their own misfortune on an innocent man, who ought not to bear it.   In my opinion, the crediting of the money to the *Eagle Bank* "does not alter the case a straw."   *Cowp.* 567.

The other Judges were of the same opinion.

New trial not to be granted.