MARIA MORRIS, Admx., etc.

*v.*

DAVID PRESTON *et al.*

1. APPELLATE JURISDICTION—*value of property in dispute, how shown.* Where the affidavit filed for a writ of replevin shows the value of the property in controversy to exceed $1000, and the property not being found under the writ of replevin the plaintiff filed a count in trover, and the judgment of the circuit court in favor of the defendant is affirmed in the Appellate Court, it will sufficiently appear from the record that the amount in controversy exceeds $1000, so as to authorize an appeal from the Appellate Court to this court. This court will look to the affidavit as furnishing a means of ascertaining the value of the property sued for.

2. If the action, however, is brought in trover, where no affidavit is filed fixing the value of the property converted, and the finding of the court for the defendant is affirmed in the Appellate Court, the plaintiff can apply to the Appellate Court, or to the judges thereof, to find and certify the value of the property in controversy, and such finding and certificate embodied in the transcript filed in this court, will be taken as evidence of the value of the matter in litigation. That court, or the judges thereof, can find the value from the evidence in the record filed in that court, if it so appears, or if it does not, then from the affidavits of the parties on an application for an appeal.

3. This court is prohibited from examining the transcript of either the circuit or Appellate courts to find therefrom whether the value of the property in dispute exceeds $1000, for the purpose of showing its right to take jurisdiction of an appeal or writ of error from the Appellate Court, where the judgment sought to be reviewed is for a less sum than $1000.

4. PRACTICE IN SUPREME COURT—*reviewing the evidence as to disputed facts.* In all criminal cases above the grade of misdemeanors, cases in which a

franchise or freehold, or the validity of a statute, or construction of the constitution is involved, and in all cases relating to the revenue, or in which the State is interested as a party or otherwise, which are required to be taken directly to this court, this court is required to examine the evidence on error assigned, although it relates to controverted facts tried in the lower court.

5. As to all other cases at law coming to this court through the Appellate Courts, this court can not inquire into the evidence to see whether it sustains the finding. The statute authorizing the bringing of the original transcript of the trial court, instead of a copy from the Appellate to this court, can not be construed to amend sec. 89 of the Practice act, so as to authorize this court to examine questions of controverted fact in any but the enumerated cases.

6. PLEDGE *of property of another — negotiable paper indorsed in blank.* Where the payee of two promissory notes of $5000 each indorsed the same in blank, and placed them in the hands of a banker as his agent, to collect the interest due thereon, and to sell the same for his benefit, and such agent pledged the same to secure a debt owing by him to another bank and for future advances, there being nothing to put the latter bank on inquiry or excite suspicion, it was *held* that the pledgee having acquired the same in good faith, in the usual course of business, from one apparently the owner and clothed with indicia of ownership, could not be divested of his right to the notes by the real owner thereof.

. 7. Where a party invests an agent with all the evidence of absolute title to negotiable paper, and thereby empowers him to wrong either the principal or others, and he disposes of the same as his own to an innocent party and fails to account therefor, the party so trusting must bear the loss.

8. BILLS AND NOTES *indorsed in blank—pass by delivery.* Bills and notes indorsed in blank, like bank bills, treasury warrants, and notes payable to bearer, pass by mere delivery, and when such paper is offered in payment, or for sale, the person taking or purchasing it is not bound to inquire as to the title of the holder, unless he has notice, or knowledge of facts which on inquiry would lead to notice.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

Mr. CHARLES H. WOOD, for the appellant.

Messrs. HOYNE, HORTON & HOYNE, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellees were in 1875 bankers in the city of Chicago, and one John Durham was a banker in Kankakee, and the former were his correspondents. He had with them an account, and the balance thereon was against him, and as security therefor they had collaterals.

Appellant held and was the owner of four notes of $5000 each, payable to her, from parties residing in Chicago, and these notes were severally secured by trust deeds on real estate in the city. She also held two other notes for $1050 each, also on persons in the city, secured in like manner. In September, 1875, she deposited all of these notes with Durham for safe keeping, and for him to collect the interest as it should accrue thereon. She, to enable him to sell two of the $5000 notes, indorsed them in blank and without recourse, and directed him to sell them at not more than ten per cent discount. She, at the same time, left with him the deeds of trust securing these two $5000 notes, retaining, however, the deeds securing the other notes. Durham afterwards sent all of the notes to appellees, in the early part of September, 1875, as it is claimed by appellant, simply that they might collect the interest thereon.

Subsequently Durham failed, owing appellees about $17,000, which they claim was advanced, in whole or in part, on these notes as collateral security. On a demand they surrendered all the notes except the two which were indorsed, which they refused to return, claiming they held a banker's lien on them for the balance Durham owed them.

Appellant thereupon brought an action of replevin for these two notes, but the sheriff failing to obtain them, on his making a return of the writ that the notes were not found, she thereupon filed counts in trover for the conversion of the notes. To these counts pleas were filed and issue joined, and a trial was had in the Superior Court of Cook county without a

218        MORRIS, ADMX. *v.* PRESTON *et al.*        [Sept. T.

Opinion of the Court.

jury, it being dispensed with by agreement of the parties. The court found the issues for defendants, and rendered a judgment in bar of the action, and for costs. Plaintiff thereupon prayed and perfected an appeal to the Appellate Court for the First District. On a trial in that court on a transcript of the record, the judgment of the Superior Court was affirmed.

Appellant then prayed and the Appellate Court granted this appeal. In granting the appeal the court does not find or certify that the case involves questions of law of such importance, either on account of principal or collateral interest, as it should be passed upon by this court. Nor is the judgment of the Superior Court for $1000 or more, as required by the 8th section of the act creating and conferring jurisdiction on Appellate courts.

The question is presented whether, under the 8th section of that act, and the 90th section of the Practice act of 1877, an appeal will lie from the Appellate Court to this, in an action of replevin or trover, where the plaintiff fails to recover in the lower court, and the judgment is affirmed by the Appellate Court;—whether, as the finding and judgment are not for the sum of $1000 or more, exclusive of costs, the value of the property in controversy may be shown, and if so, in what manner.

In the cases of *McGuirk* v. *Burry, ante,* p. 118, *Lewis* v. *Shear, ante,* p. 121, and *Hancock* v. *Tower, ante,* p. 150, it was held that the value of the property, or matter in litigation, must appear from the record to be worth $1000 or more, and that we would not hear evidence on an appeal to prove the value, nor would we take the averments in the pleadings as proof of its value. But it was not said in what manner the fact should be made to appear in the record. In this case the affidavit filed by the plaintiffs to procure the writ of replevin states the notes sued for were worth $10,400. This we regard as sufficiently appearing, from the record, to authorize an appeal from the Appellate Court. Had this action been brought ·

in trover, and no affidavit filed fixing the value of the notes, and the finding had been as it was, for the defendant, the plaintiff could have applied to the Appellate Court, or the judges thereof, to find and certify the value of the notes in controversy, and we would take such a finding and certificate embodied in the transcript filed in this court, as evidence of the value of the matter in litigation. That court, or the judges thereof, could find the value from the evidence in the record filed in that court, if it so appeared; or if it did not, then from the affidavits of the parties on the application for the appeal. In this manner expense, delay and vexation would be avoided. The party entitled to his judgment would not be required to wait until the next term of this court to dismiss an appeal improvidently granted. Under such a practice only such appeals would be allowed as the parties are entitled to prosecute. Nor does this impose any hardship on the person praying an appeal, as he is only entitled to it by his bringing himself within the provisions of the statute, by showing that he has the right, and is not within the prohibition of the statute when he claims the right.

Appellant's attorney has argued the case at some length, on the evidence returned in the transcript of the record from the Appellate Court, to show the findings of both the Superior and the Appellate Courts are not sustained by its weight.

The 89th section of the Practice act provides that, "The Supreme Court shall re-examine cases brought to it by appeal or writ of error as to questions of law only, and no assignment of error shall be allowed which shall call in question the determination of the inferior or Appellate courts upon controverted questions of fact in any case, excepting those enumerated in the preceding sections."

The cases enumerated in the 88th section are, criminal cases and cases involving a franchise or freehold, or the validity of a statute, and cases in chancery. Hence we were prohibited from considering the evidence in reference to the finding in the lower courts as to the controverted facts in any other

cases. This is manifest from these sections. But it is provided in the amended 88th section of 1879, that all criminal cases above the grade of misdemeanors, cases in which a franchise or freehold, or the validity of a statute, or construction of the constitution is involved, all cases relating to the revenue, or in which the State is interested as a party or otherwise, shall be taken directly to the Supreme Court. In these cases, under the 89th section we are no doubt required to examine the evidence, on error assigned, although it relates to controverted facts tried in the lower court. But in what manner that affects a case in replevin or trover we are at a loss to perceive. Such cases are not enumerated in either the original or amended 88th section. Nor can we comprehend by what means the permission to bring the original transcript of the lower court, instead of a copy from the Appellate to this court, can be construed to alter or amend the 89th section so as to authorize us to examine questions of controverted fact in any but the enumerated cases. That provision was doubtless intended to enable parties to save the expense of a copy of the transcript filed in the Appellate Court. This, and only this, seems to be its full scope and purpose. We must therefore take the facts as they were found by the Superior Court, as that finding has been affirmed by the Appellate Court. Their finding is conclusive of the facts. Then, on the merits of the case, we can only look to the findings of the Appellate Court.

It is conceded that the two notes in controversy were assigned in blank, and were transferable by delivery. It is also conceded that appellant placed them in the hands of her banker, Durham, to collect interest thereon, and to sell the same. It is further conceded that he placed them, thus indorsed in blank, in the hands of appellees for some purpose. These facts are not controverted. But the purpose for which Durham did deliver them to appellees was controverted in both the Superior and Appellate courts. Appellant claims that they were placed in the hands of appellees to collect

accruing interest, and to sell them for her benefit; but they insisted that Durham pledged them to secure about $7000 he then owed them, and for future advances by them to him.

On these disputed facts the evidence was conflicting, and it may be irreconcilable. On the evidence adduced the Superior Court found the notes were so pledged, and appellees acquired a lien. And the Appellate Court affirmed this finding by affirming the judgment of the Superior Court on the evidence in the record before them.

If the notes were so pledged, did appellees, by the rules of law, acquire a lien, or shall the title of appellant prevail over such a pledge? It is not denied that she was the owner of the notes and that Durham had no interest therein. All know that bank bills, treasury warrants, notes payable to bearer, and bills and notes indorsed in blank, pass by mere delivery. Nor, when such paper is offered in payment or for sale, is the person receiving or purchasing it required to inquire as to the title of the holder unless he has notice or is put on inquiry. If he purchases in good faith the law will protect him. With all such paper possession is evidence of ownership, and the commercial value of such paper would be greatly impaired and its negotiability would be destroyed if the taker was required to investigate the title and to seek for latent equities before receiving it. But the law has imposed no such burthen upon him until he has notice, or knowledge of facts which on inquiry would lead to notice.

Appellant, when she placed the notes thus indorsed in the hands of Durham, thereby empowered him to sell and pass the title, however much he may have disregarded his duty or her instructions. Nor would the purchaser be required to see that he paid to her the proceeds, nor could he, when he was wholly uninformed of her rights or that she had any, even the slightest claim. She had invested Durham with what appeared to the commercial world an absolute title, with nothing to excite suspicion or to demand inquiry. Having done so, and he having abused his trust by pledging the notes for his own

purposes in disregard of her rights, she must suffer the loss. He had the power, by being thus invested with evidence of title, to deal with the paper with all persons not having notice precisely as though it was his own, and appellant can not look to appellees to make good the loss occasioned by his bad faith or the abuse of trust by her agent. It is, no doubt, a great hardship that she should sustain the loss, but she, by misplaced confidence, empowered her agent to wrong either her or others, and as one or the other must suffer the loss, she having placed it in Durham's power to perpetrate the fraud, it must fall on her.

On the conclusive facts as found by the Appellate Court, we must affirm its judgment.

*Judgment affirmed.*

Mr. JUSTICE CRAIG: I do not concur with a majority of the court in the decision of this case. As to the questions of practice discussed in the opinion, while I find no fault with what is said on that subject, in my judgment the questions considered do not arise on this record, and it would be far better to pass upon them when they are properly presented. As respects the merits of the case, as I understand the record, the appellees, Preston, Keen & Co., received the notes in question as bankers, to be sold on the market, and as they were received for a special purpose, no lien attached, and they had no right to hold them on account of claims due from Durham to them after he failed.