## American Exchange National Bank v. Anna Thuemmler.

1. BANKS AND BANKING—*Drafts for Collection—Application of Proceeds.*—Appellee held a draft, payable to her order, drawn upon a St. Louis bank, which she took to a Milwaukee bank on July 19, 1893, indorsed it in blank and left it for collection. The Milwaukee bank indorsed it and sent it to the American Exchange Bank of Chicago, appellant, for collection and credit, and appellant, without crediting it to the Milwaukee bank, forwarded it by mail to its St. Louis correspondent and collected the amount from the drawee and credited the same to the account of the Milwaukee bank, which had in the meantime suspended payment, leaving its account with the appellant overdrawn to the amount of $4,000. *It was held* that the appellant could not lawfully apply the proceeds of the draft to the overdrawn account of the Milwaukee bank, but was liable to the original holder of the draft for the amount collected and interest.

**Assumpsit**, on the common counts. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed May 10, 1901.

SWIFT, CAMPBELL & JONES, attorneys for appellant.

LACKNER, BUTZ & MILLER, attorneys for appellee; JULIUS E. ROEHR, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee sued to recover the proceeds of a draft for $1,000, which was sent to appellant for collection by the South Side Savings Bank of Milwaukee. The latter bank had overdrawn its account with appellant and the amount of the draft when collected was applied toward making good such overdraft.

The material facts are stipulated.    Appellee had received the draft in payment of an insurance policy upon her husband's life.    It was payable to her order and drawn upon the National Bank of Commerce of St. Louis, Mo.    She took it July 19, 1893, to the South Side Savings Bank of Milwaukee, indorsed it in blank, and left it, not as a deposit, but for collection only.    Appellee had no account with said bank, and was told to call for the money the following Saturday.    Said bank indorsed the draft, " Pay A. L. Dewar, Cashier, or order, for account South Side Savings Bank, Milwaukee, Wisconsin; John B. Koetting, Cashier," and sent it the same day to appellant with a letter stating that it was inclosed " for collection and credit."    The next day, July 20th, appellant received the draft and without crediting it to the Milwaukee bank forwarded it by mail " for collection " to its St. Louis correspondent, which—July 21st—collected the amount from the drawee, credited appellant with the proceeds, and so advised the latter by letter of that date.    That letter was received by appellant the morning of July 22d, before opening its doors for business, and the amount was then credited to the account of the Milwaukee bank, which had, however, finally suspended the night before.    It appears the Milwaukee bank at the close of business July 20th had overdrawn its account with appellant $3,602.39, and that at the close of business the next day—July 21st—the overdraft had increased to $4,724.06, more than a thousand dollars, which increase was permitted by appellant partly, it is claimed, in reliance upon the proceeds of the draft in controversy.    This overdraft was reduced upon appellant's books to $3,724.06, the morning of July 22d, by crediting the Milwaukee bank, which had then closed its doors, with the amount of the draft in controversy as aforesaid.    The South Side Savings Bank of Milwaukee having failed, as above stated, to open its doors for business that morning, was shortly thereafter placed in the hands of a receiver for the purpose of winding up its affairs.

Appellant's counsel asked the court at the close of the

plaintiff's evidence, and again at the close of all the evidence, to instruct the jury to find the issues for the defendant, both of which requests were refused. It is urged that in these refusals the court erred.

It is conceded that appellant, so far as the evidence shows, had no actual notice up to the time it credited the proceeds of its collection upon its own books, to the account of the Milwaukee bank, that the latter was not the owner of the draft. But it is also undisputed that the Milwaukee bank was not such owner, and received the draft from appellee, not for deposit, but for collection only. It appears that appellant did not, immediately upon its receipt, credit the draft to the Milwaukee bank, but merely sent it to appellant's St. Louis correspondent for collection. This course was not, for some reason, pursued with other remittances from the Milwaukee bank received at or about the same time, which were credited at once and without waiting for their collection. The evidence tends to show also that appellant did not rely wholly upon this $1,000 draft as a reason for allowing the overdrafts by the Milwaukee bank, but rather upon securities with a face value of over fifty thousand dollars deposited with it as collateral by the said South Side Savings Bank. Objection was made to the admission of this evidence, but we regard it as competent and material, bearing directly upon appellant's claims, that overdrafts were allowed upon the faith of the draft belonging to appellee. It was properly submitted for the jury's consideration. These overdrafts, both before and after appellant received the draft in question for collection, exceeded the amount of the latter several times over. An overdraft of $10,000 was paid the morning of July 22d. It was for the jury to determine from the evidence whether or not these were allowed merely on the faith of the collection of a single thousand dollar draft, which had not itself been treated as subject to appellant's appropriation.

The Milwaukee bank had ceased to do business and closed its doors, not to re-open them, the night before appellant credited its account with the proceeds of this draft. It had failed before the collection of the draft was reported

to appellant from St. Louis, and while appellant was simply acting as an agent for its collection. Appellant did not appear to consider itself as entitled nor wish to become its owner. No relation of debtor and creditor, so far as the draft in controversy was concerned, had been established between said Milwaukee bank, before its failure, and appellant's. The failure of the Milwaukee bank at once terminated appellant's agency. There had been not even a provisional credit of the draft to the Milwaukee bank, and it was too late then, at least, for appellant to change its relationship as agent for collection, to that of a mere debtor to the suspended bank for the money collected, in order to offset the latter against its own claims. First National Bank v. Bank of Monroe, 33 Fed. Rep. 408 (412); Fifth Nat. Bank v. Armstrong, 40 Fed. Rep. 46 (49). See also, Com. Bank of Penn. v. Armstrong, 148 U. S. 50 (57).

It is urged that there was nothing upon the face of the draft to put appellant on inquiry as to its ownership, and that the indorsement in blank by appellee invested the Milwaukee bank with what appeared to be an absolute title, upon which appellant had a right to rely. Conceding this, the fact remains, as before stated, that appellant did not credit the draft to the Milwaukee bank until after the failure of the latter; did not, in other words, receive it in payment of any obligation of said Milwaukee bank, but held and treated it as paper in its hands merely for collection. Appellant had assumed no obligation in reference to that paper, but maintained itself in the position of agent. Why this was done does not appear. Appellee had left her policy or benefit certificate with the draft in the hands of the Milwaukee bank, but it does not appear whether it was forwarded with the draft to and by appellant or not. At all events appellant's course indicates the existence of some reason or notice which led it to treat the draft as not the property of the Milwaukee bank, until after the latter's failure. This fact distinguishes the case at bar from the facts as they appeared in Bank of Metropolis v. New England Bank, 1 How. 234, Morris v. Preston, 93 Ill. 215, and

Doppelt v. Nat. Bank of Republic, 175 Ill. 432, cited by appellant's attorney. In those cases there had been advances made expressly upon the faith of the paper in question, and as a loss had to be sustained by some one it was properly placed upon the parties who had empowered their respective agents to commit the wrong. Here, however, appellant had not, so far as appears, lost anything on the faith of the draft in controversy. The proceeds of the draft had been neither actually nor constructively applied to pay any indebtedness to appellant before the failure of the Milwaukee bank. As is said in Russell v. Hadduck, 3 Gilman, 233 (239), the true principle upon which bankers' liens must be sustained is, " there must be a credit given upon the credit of the securities either in possession or in expectancy." In the present case this had not been done before the failure, and as before said, it was too late to give such credit afterward. This is true even though appellant may have had no notice of the failure at the time. The credit then given was merely nominal, a matter of book-keeping, which did not change the facts nor the rights of the parties as they stood at the time of the failure. Lawrence v. Stonington Bank, 6 Conn. 521 (529); Bank of Metropolis v. New England Bank, 6 Howard, 213 (16 Curtis, 660); Lindauer v. Fourth Nat. Bank, 55 Barbour, 75 (84). The evidence, we think, fully warranted the jury in finding that appellant received the draft for collection only, and that it made no new advances on the faith thereof. It was not error to deny appellant's motion to direct a verdict in its favor.

In view of what has been said we do not deem it necessary to consider at length the instructions to the giving or refusal of which objection is made. We find no harmful error in the course pursued by the trial court in that regard.

We are of opinion that the allowance of interest in this case is proper. Appellant having appropriated the proceeds of the draft to its own use without warrant, is, we think, under the facts in evidence, chargeable with unreasonable and vexatious delay in payment. The judgment of the Circuit Court must be affirmed.