THE AMERICAN EXCHANGE NATIONAL BANK OF CHICAGO

*v.*

ANNA THEUMMLER.

*Opinion filed February 21, 1902.*

BANKS—*right of receiving bank to credit proceeds of draft on overdraft of forwarding bank.* The possession by a bank of a draft endorsed in blank by the payee is *prima facie* evidence of the bank's ownership thereof, and if its correspondent to which it sends the draft for collection has no notice that the forwarding bank holds the draft merely as agent of the payee for collection, such correspondent may apply the proceeds of the draft to the reduction of an overdraft upon it by the forwarding bank, which has become insolvent, if such application is made before notice of the capacity in which the forwarding bank held the draft.

BOGGS and HAND, JJ., dissenting.

*American Ex. Nat. Bank* v. *Theummler*, 94 Ill. App. 622, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is an action in assumpsit, brought on May 27, 1896, by the appellee against the appellant bank. The declaration contains only the common counts for money loaned and advanced, money paid, laid out and expended, money had and received for the use of plaintiff, money due for interest, and money due on account stated. The case was tried before the court and a jury, and upon a stipulation of facts, with leave, however, to either party to offer further testimony. The jury returned a verdict for $1325.00, upon which, after motion for new trial was denied, judgment was entered in favor of plaintiff against defendant on February 17, 1900. An appeal was taken from this judgment to the Appellate Court, and there the judgment of the circuit court was affirmed. The present appeal is prosecuted from such judgment of affirmance.

The facts, substantially, are as follows: The appellee on or about July 19, 1893, received at Milwaukee from the Milwaukee officers of a lodge of the Knights of Honor a draft for $1000.00 payable to her order, drawn upon the National Bank of Commerce of St. Louis, Missouri, said draft being in payment of insurance money due to her upon the life of her deceased husband. On July 19, 1893, she took the draft to the South Side Savings Bank in Milwaukee, and presented the same to John B. Koetting, at that time cashier of said South Side Savings Bank, and one Hubert Kopmeier, then the teller of said savings bank. She left the draft with them for collection, and they told her that they would collect it for her, and asked her to endorse the draft in blank. She did endorse it in blank, and left it, together with her policy or benefit certificate, with the South Side Savings Bank of Milwaukee for collection only. She had no account with that bank. They told her to return on the following Saturday, and they would have the money for her. On July 19, 1893, Koetting, the cashier, sent the draft enclosed in a letter to A. L. Dewar, cashier of the appellant, the American Exchange National Bank of Chicago, saying in the letter: "I herewith enclose for collection and credit.—No pro.—Nat'l. Bk. of Commerce $1000." On July 20, 1893, Dewar received the draft at Chicago from said South Side Savings Bank, the draft being endorsed as follows, to-wit: "Anna Theummler." "Pay A. L. Dewar, cashier, or order, for account South Side Savings Bank, Milwaukee, Wisconsin.—John B. Koetting, Cashier." Dewar, cashier of the appellant bank, sent the draft for collection on July 20, 1893, to its St. Louis correspondent, the National Bank of the Republic, St. Louis, Missouri, in a letter signed by Dewar, dated Chicago, July 20, 1893, and saying: "We enclose for collection items as under note. Please report by number or date of letter. Number 28. Drawee Commerce. Amount $1000." On July 21, 1893, the draft was received by the National Bank of the Republic

at St. Louis, and was, on July 21, 1893, collected by the National Bank of the Republic, and placed to the credit of the appellant on the books of the National Bank of the Republic.   The National Bank of the Republic on July 21, 1893, advised appellant by letter of that date of the collection of the item, and of the fact that it had been credited by it to the appellant.   This letter was received by appellant on the morning of July 22, 1893, before the opening of appellant's bank for business on July 22, 1893.

For some months before July, 1893, and including that month, until the South Side Savings Bank ceased to do business, appellant was the regular Chicago correspondent of the South Side Savings Bank of Milwaukee.   Appellant and said Milwaukee bank kept a mutual account with each other; the South Side Savings Bank sent to appellant nearly every day checks and drafts on Chicago for credit to the account of the South Side Savings Bank, and, in the course of dealings, also sent to appellant checks and drafts on other cities, and negotiable paper, for collection and credit to the account of said South Side Savings Bank; the South Side Savings Bank also drew drafts on appellant, which were presented for payment by the holders thereof in regular course of business.

Appellant had no actual notice, at the time it received the draft for $1000.00 from the South Side Savings Bank, nor at the time it credited the same to the account of the South Side Savings Bank, as hereinafter stated, that the South Side Savings Bank was not the owner of said draft for $1000.00, and appellant had no actual notice or knowledge, at either of said times, that the South Side Savings Bank held said draft for collection for plaintiff's account.   At the close of business on July 20, 1893, the account of the South Side Savings Bank with appellant was, under the course of dealings between the banks, overdrawn $3602.39; on July 21, 1893, appellant, under

the course of dealing above named, received from the South Side Savings Bank by mail items amounting to $1673.40, which it placed to the credit of the South Side Savings Bank on said date, and on July 21, 1893, paid drafts of the South Side Savings Bank to the amount of $2795.07, thus leaving said account overdrawn at the close of business on July 21, 1893, to the amount of $4724.06; appellant on the morning of July 22, 1893, before the insolvency of the South Side Savings Bank was disclosed to it, and before the opening of its bank for business on that day, at once credited the amount of the $1000.00 draft to the account of the South Side Savings Bank with appellant, reducing the overdraft to $3724.06, and at the same time the overdraft was further reduced by crediting to the account of the South Side Savings Bank the sum of $826.71 received by that morning's mail for credit of the latter bank; at the opening of appellant's bank for business on the morning of July 22, 1893, appellant, before it learned that the South Side Savings Bank had closed its doors, paid a draft of the South Side Savings Bank upon said appellant for the sum of $10,000.00, which payment overdrew the account between the two banks to the amount of something between $12,500.00 and $13,000.00, for the amount of which overdraft appellant filed a claim with the receiver of the South Side Savings Bank; appellant has not, and will not, realize from items of collections it had on hand for the South Side Savings Bank, and from dividends, sufficient to pay the balance due to it.

On July 22, 1893, the South Side Savings Bank did not open its doors for business, and a receiver was some days thereafter appointed to wind up its affairs, and it has never resumed business. On July 22, 1893, appellee went to the South Side Savings Bank of Milwaukee to get the proceeds of said draft, but the bank had closed its doors and ceased to do business, and plaintiff has never received the $1000.00, the proceeds of the draft.

Long subsequent to July 22, 1893, but before the beginning of this suit, appellee demanded of appellant the proceeds of the draft, and appellant refused to pay the same to her; when such demand was made, appellee informed the appellant that the South Side Savings Bank held the draft only for collection for appellee's account; and this was the first notice the appellant had that the South Side Savings Bank held said draft for collection for the account of appellee.

Upon the trial, appellee introduced in evidence over the objection of appellant, a letter from Dewar, appellant's cashier, to Koetting, cashier of the South Side Savings Bank, dated June 2, 1893, showing that appellant held, subject to the order of the Milwaukee bank, certain bills of the face value of about $55,000.00 as collateral, saying in the letter: "Should you require it, we shall gladly pay your check by way of an overdraft up to an extent of $25,000.00, holding the above as collateral against the same. This is in accordance with arrangements made with your president this morning."

Upon the trial of the case, the appellant asked the court to give to the jury eight instructions, all of which were refused, and to the refusal exception was taken. Appellee asked the court to give no instructions to the jury, and none were given on behalf of appellee before the jury retired to the jury room. After the jury had retired to consider of their verdict, and had been engaged in considering the same for an hour or more, they sent a request to the court to be instructed as to the law in the case. Thereupon, after the receipt of such request, the court gave to the jury an instruction, to the giving of which instruction by the court the appellant, the defendant below, then and there duly excepted.

SWIFT, CAMPBELL & JONES, for appellant.

LACKNER, BUTZ & MILLER, (JULIUS E. ROEHR, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

When appellee left her draft, which was payable to her order, with the South Side Savings Bank of Milwaukee, she endorsed the draft in blank. She did not sell the draft to the South Side Savings Bank of Milwaukee, but left it for collection only. The draft was sent by the South Side Savings Bank of Milwaukee to the appellant to be collected, but the appellant, it is conceded, had no notice or knowledge, that the draft had been left with the Milwaukee bank for collection only and that the Milwaukee bank received the draft from appellee, as agent, and not as owner. So far as appellant knew, under the admitted facts, the South Side Savings Bank of Milwaukee was the owner of the draft. The draft itself was not introduced in evidence, and, therefore, it is impossible to say whether there was anything upon the face of the draft, which was calculated to put appellant upon inquiry as to whether the South Side Savings Bank held it for collection, or as owner. The instructions, asked by the appellant and refused by the court, announced to the jury that the possession by the South Side Savings Bank of the draft in controversy, endorsed in blank by the appellee, was *prima facie* evidence that the South Side Savings Bank was the owner of the draft, and that appellant had the right to treat the South Side Savings Bank as the owner thereof, and that appellant had the right to apply the proceeds of the collection of the draft·to the payment or reduction of an overdraft of the South Side Savings Bank in the manner and under the circumstances set forth in the statement preceding this opinion, if, at the time appellant so applied the proceeds of the draft, it had no notice that the South Side Savings Bank held such draft for collection only for the appellee.

Under the decisions of this court, and under the decisions of the Supreme Court of the United States followed and endorsed by this court, the instructions so

refused stated the law correctly, and their refusal was error. The instruction, actually given by the court to the jury at the request of the jury, made an announcement, which was to some extent in conflict with the doctrine thus embodied in appellant's refused instruction.

In *Bank of the Metropolis* v. *New England Bank*, 1 How. 234, it appeared that there had been for several years mutual and extensive dealings between the Bank of the Metropolis and the Commonwealth Bank, and an account current kept between them, in which they mutually credited each other with the proceeds of all paper remitted for collection when received, and charged all costs of protests, postage, etc.; that accounts were regularly transmitted from the one to the other and settled upon these principles, and that the paper transmitted always appeared upon its face to be the property of the respective banks and to be remitted by each of them upon its own account; and it was there held, that there was a lien for a general balance of account upon the paper thus transmitted, no matter who might be its real owner, the Supreme Court of the United States there saying: "If the notes remitted had been the property of the Commonwealth Bank, there would be no doubt of the right to retain; because it has been long settled, that wherever a banker has advanced money to another, he has a lien on all the paper securities, which are in his hands, for the amount of his general balance, unless such securities were delivered to him under a particular agreement. The paper in question was, however, the property of the New England Bank, and was endorsed and delivered to the Commonwealth Bank for collection without any consideration, and as its agent in the ordinary course of business; it being usual, and indeed necessary, so to endorse it, in order to enable the agent to receive the money. Yet the possession of the paper was *prima facie* evidence that it was the property of the last mentioned bank; and without notice to the contrary, the plaintiff in error had

a right so to treat it, and was under no obligation to inquire whether it was held as agent or as owner; and if an advance of money had been made upon this paper to the Commonwealth Bank, the right to retain for that amount would hardly be disputed.   We do not perceive any difference in principle between an advance of money and a balance suffered to remain upon the faith of these mutual dealings.   In the one case as well as the other, credit is given upon the paper deposited or expected to be transmitted in the usual course of the transactions between the parties."

In *Russell* v. *Hadduck*, 3 Gilm. 233, this court referred to the case of *Bank of the Metropolis* v. *New England Bank, supra,* stated its facts and endorsed its doctrine, quoting from it the statement therein made that there is no dif- ference in principle between an advance of money and a balance suffered to remain upon the faith of the mutual dealings there referred to, inasmuch as in the one case as well as in the other, credit was given upon the paper deposited or expected to be transmitted in the usual course of transactions between the parties.

In *Bank of the Metropolis* v. *New England Bank*, 6 How. 227, the same case again came before the Supreme Court of the United States, and the second opinion, as well as the first, was delivered by Mr. Chief Justice Taney, who summarized the doctrine previously announced by him in certain instructions which, as it was therein declared, should have been given by the lower court to the jury. Those instructions were as follows: "If, upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills and notes in question, and that it transmitted them for collection merely as agent, then the Bank of the Metropolis was not entitled to retain against the New England Bank for the general balance of the account with the Commonwealth Bank.  And

if the Bank of the Metropolis had not notice that the
Commonwealth Bank was merely an agent, but regarded
and treated it as the owner of the paper transmitted,
yet the Bank of the Metropolis is not entitled to retain
against the real owners, unless credit was given to the
Commonwealth Bank, or balances suffered to remain in
its hands to be met by the negotiable paper transmitted
or expected to be transmitted in the usual course of the
dealings between the two banks.   But if the jury found
that, in the dealings mentioned in the testimony, the
Bank of the Metropolis regarded and treated the Com-
monwealth Bank as the owner of the negotiable paper
which it transmitted for collection, and had no notice to
the contrary, and, upon the credit of such remittances
made or anticipated in the usual course of dealing be-
tween them, balances were from time to time suffered to
remain in the hands of the Commonwealth Bank, to be
met by the proceeds of such negotiable paper, then the
plaintiff in error is entitled to retain against the de-
fendant in error for the balance of account due from the
Commonwealth Bank."

The same doctrine has been announced by the Su-
preme Court of Massachusetts in the case of *Wood* v.
*Boylston Nat. Bank,* 129 Mass. 359, where the case of *Bank
of the Metropolis* v. *New England Bank* is referred to, and
the case of *Lawrence* v. *Stonington Bank,* 6 Conn. 521, is
distinguished from such cases as the case there in hand,
and here at bar.   It appears that in the Connecticut case,
the bank to whom the draft was sent for collection had
notice that it was held for collection merely, and knew
of the failure of the remitting bank before the draft
was paid.

In *Morris* v. *Preston,* 93 Ill. 215, this court said (p. 221):
"With all such paper possession is evidence of owner-
ship, and the commercial value of such paper would be
greatly impaired and its negotiability would be destroyed,
if the taker was required to investigate the title and to

seek for latent equities before receiving it.  But the law has imposed no such burthen upon him until he has notice, or knowledge of facts which on inquiry would lead to notice.  Appellant, when she placed the notes thus endorsed in the hands of Durham, thereby empowered him to sell and pass the title, however much he may have disregarded his duty or her instructions.  Nor would the purchaser be required to see that he paid to her the proceeds, nor could he, when he was wholly uninformed of her rights, or that she had any, even the slightest, claim.  She had invested Durham with what appeared to the commercial world an absolute title, with nothing to excite suspicion or to demand inquiry.  Having done so, and he having abused his trust by pledging the notes for his own purposes in disregard of her rights, she must suffer the loss.  He had the power, by being thus invested with evidence of title, to deal with the paper with all persons not having notice, precisely as though it was his own, and appellant cannot look to appellees to make good the loss occasioned by his bad faith, or the abuse of trust by her agent.  It is, no doubt, a great hardship that she should sustain the loss, but she, by misplaced confidence, empowered her agent to wrong either her or others, and as one or the other must suffer the loss, she having placed it in Durham's power to perpetrate the fraud, it must fall on her."

Again, in the recent case of *Doppelt* v. *National Bank of the Republic,* 175 Ill. 432, this court held that a blank endorsement of a check by the payee transfers a good title to the holder, free from all equities in the payee's favor; and that a bank receiving from another bank a check endorsed in blank by the payee, is authorized to collect the check, credit the proceeds to the forwarding bank and honor its drafts against the credit; and the payee cannot, upon the insolvency of the forwarding bank, recover from the bank which made the collection, without proof that the latter had notice that the for-

warding bank received the check merely as the payee's agent for collection; and it was there said: "Under the pleadings it became incumbent on appellant to show that he deposited these checks with Kopperl for collection, only. He endorsed them in blank, without any restrictions whatever, and, under the well settled rule of this State, he thereby transferred a good title to Kopperl, free from all equities in his favor. * * * Under these circumstances appellee could not know that he claimed or pretended to any rights in the paper, and it was authorized to act upon Kopperl's endorsement of the checks, and proceed to collect the same and credit his account with the proceeds."

Cases in New York are referred to which hold the contrary of the doctrine here announced. (*McBride* v. *Farmers' Bank*, 26 N. Y. Rep. 450.) But it is to be noted, that the courts in the State of New York have refused to follow the doctrine, laid down by the Supreme Court of the United States in *Bank of the Metropolis* v. *New England Bank, supra,* while the Supreme Court of this State has adopted the doctrine of the United States Supreme Court upon this subject.

The instructions, asked by appellant and refused by the court, required the jury to find from the evidence that the appellant applied the proceeds of the collection of the draft in controversy to the payment of the overdraft before it had any notice of the insolvency of the South Side Savings Bank of Milwaukee, as well as before it had any notice that the South Side Savings Bank received the draft as agent and for collection only. This feature of the refused instructions was correct under the doctrine laid down by the Supreme Court of the United States in *Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U. S. 58, where the court, speaking through Mr. Justice Brewer, say: "We also agree with the circuit court, in its conclusions as to those moneys collected by sub-agents to whom the Fidelity was in debt, and which col-

lections had been credited by the sub-agents upon the debts of the Fidelity to them, before its insolvency was disclosed, for there the moneys had practically passed into the hands of the Fidelity, and the collection had been fully completed. It was not a mere matter of book-keeping between the Fidelity and its agents; it was the same as though the money had actually reached the vaults of the Fidelity. It was a completed transaction between it and its sub-agents, and nothing was left but the settlement between the Fidelity and the principal—the plaintiff."

For the errors above indicated, the judgment of the Appellate Court and the judgment of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.          *Reversed and remanded.*

BOGGS and HAND, JJ., dissenting.