(No. 19904.—

Joseph Kamfner, Plaintiff in Error, *vs.* The Auburn Park Trust and Savings Bank *et al.* Defendants in Error.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

SIMON HERR, (ARTHUR J. GOLDBERG, of counsel,) for plaintiff in error.

DENEEN, HEALY & LEE, (HARRY W. LIPPINCOTT, and DONALD N. SCHAFFER, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Joseph Kamfner, a practicing attorney in the city of Chicago, filed his bill in the superior court of Cook county against Oscar L. Halberg, O. Earl Halberg and the Auburn Park Trust and Savings Bank of Chicago, praying that the sum of $3000 given by the complainant to Oscar L. Halberg and deposited in the Auburn Park Bank by him to the credit of his son, O. Earl Halberg, be declared a trust fund, that an accounting be had as to such fund, that the trustees be removed, and that the bank be required to return the fund, with interest thereon, to complainant. Oscar L. Halberg was served but did not appear. O. Earl Halberg appeared *pro se* but filed no pleadings. Issues were joined upon the amended bill, the amended answer of the bank and the replication thereto, and the cause was heard by the chancellor. A decree was entered dismissing the bill for want of equity and an appeal was perfected to the Appellate Court for the First District, where the decree of the superior court was affirmed. This court granted a petition for a writ of *certiorari* to review the judgment of the Appellate Court.

The facts presented by the record are not in serious dispute and in substance are as follows: On January 5, 1926, Oscar Halberg interviewed Kamfner in the latter's office in Chicago relative to the purchase of about 170 acres of land located at Lincoln highway and Wolf road, in Will county. Halberg told Kamfner the property could be purchased for $350 an acre; that a $3000 payment on the purchase price would have to be made and deposited in the Mokena State Bank, at Mokena, Illinois, and if Kamfner

would furnish the money to make such initial payment Halberg would then obtain from the owners a signed contract for the sale of the property and a receipt for the money from the Mokena bank and deliver these to Kamfner. Kamfner was leaving that noon for New York but gave Halberg a properly endorsed check for $1500 and instructed Edwin Halligan, one of his law partners, to obtain the balance of the $3000 and deliver it to Halberg. Three additional checks were delivered to Halberg, and on January 6 and 7 all of the checks, amounting to $3000, were endorsed by him and deposited in the checking account of his son, Earl Halberg, in the Auburn Park Trust and Savings Bank. Earl Halberg was employed as a repairman for the telephone company until about August, 1925, when, at the age of about twenty-three years, he engaged in the real estate business, under the name of Halberg Real Estate, on South Halsted street and opened a personal checking account with the Auburn Park Trust and Savings Bank. About October 1, 1925, he moved his office to 7900 South State street. He was agent for the Borsique apartment building on Eighty-second street and collected the rents, which he placed in his Auburn Park Bank account. He paid some expenses connected with the operation of the building out of this account. His father was also in the real estate business at the time and was located on North Dearborn street, in Chicago. He had an account in the Auburn Park Bank under the name of O. L. Halberg & Co. After November 1, 1925, Oscar Halberg spent about five days out of each week at the son's real estate office, but there was no change in the name of the office or business. It had been arranged with the officers of the Auburn Park Bank that Oscar Halberg should be permitted to make deposits and draw checks upon the son's account, and this practice was followed. For some time Oscar Halberg had owed the Auburn Park Bank about $8800, which was evidenced by a demand note. On January 6, 1926, he drew a check

in Earl's name on the latter's account in the sum of $2900, payable to the Mokena State Bank, and personally delivered it to the Mokena bank on the same day as an initial deposit on the purchase of the 170 acres of land. The check was presented for payment at the Auburn Park Bank on January 9 and payment was refused. Earl Halberg communicated with Kamfner on Saturday morning, January 9, stating he had been informed that the Auburn Park Bank had refused payment on the $2900 check drawn in Earl's name and given to the bank at Mokena as a deposit on the purchase of the property. Kamfner arranged for attorney Halligan and Earl Halberg to call at the Auburn Park Bank that evening to demand the return to Kamfner of the $3000 deposit made in that bank in the name of Earl Halberg. The testimony of Halligan and Earl Halberg was to the effect that after explaining to the bank officials that the money belonged to Kamfner, one of the vice-presidents of the bank stated that no application or disposition of the fund had been made at that time but a directors' meeting would be held on the following Tuesday or Wednesday and then they would decide what disposition would be made of the fund. The vice-president of the bank denied making any such statement. By the testimony of several bank officials and the documentary evidence of the bank it was shown that on Saturday morning, January 9, the account of Earl Halberg in the Auburn Park Bank was debited $4275.29, which was the balance then in that account, and that amount was credited to the demand note of Oscar Halberg held by the bank; that the balance then on deposit in the account of O. L. Halberg & Co., namely, $9.94, was also credited on Oscar Halberg's note and the latter account closed; that this action of the bank officials was completed before the bank had any notice of Kamfner's claim to any part of the money deposited in Earl Halberg's account. The record shows the minutes of the meeting of the bank's board of directors held on Wednesday, January 13, at which time

Oscar Halberg appeared before the board. At this meeting the action of the bank officials in debiting the accounts was ratified and approved by the board of directors. The bank statement of Earl Halberg, received by him prior to the meeting of the board of directors, showed his account to have been closed on January 9. He also testified that he learned on Saturday morning, January 9, that his account at the bank had been closed, and that the vice-president told him the same thing on Saturday evening. He ceased his connection with the real estate office of Halberg Real Estate about January 15, 1926, and his father continued to operate the business for some time thereafter. The amended bill states that Oscar Halberg is insolvent.

The foregoing is a fair statement of the facts, and after an examination and consideration of the evidence in the record we are warranted in saying that it is not shown that the Auburn Park Bank had any knowledge of the claim of Kamfner to the funds deposited in the bank to the credit of Earl Halberg prior to debiting Earl's account on the morning of January 9, neither is it shown that the bank had sufficient information to place it upon inquiry as to the character of the funds deposited in Earl's account.

It is contended by Kamfner that the fund given to Oscar Halberg and deposited by him in Earl Halberg's account in the Auburn Park Bank was burdened with a trust in favor of Kamfner and could be followed in equity until it came into the hands of an innocent purchaser with equities superior to those of Kamfner; that the fund was sufficiently identified by tracing it to Earl's bank account, and it was unnecessary that the deposit be a special deposit for the use of Kamfner in order to enable him to recover it; that no privity of contract was necessary between Kamfner and the bank; that even though the bank had no notice of Kamfner's interest in the fund at the time the bank applied the fund to Oscar's indebtedness to the bank it did not change its position as a result of the deposit, no superior equities

were raised in its favor and Kamfner was entitled to recover the money; that Kamfner's money having been deposited in the account of Earl, who was not indebted to the bank, prevented the latter from applying the deposit to Oscar's note held by the bank; that the dealings of the Halbergs were sufficient to place the bank on inquiry as to the ownership of the funds, and that the bank had notice of Kamfner's interest in the fund before it was applied as a credit upon Oscar's note.

The Appellate Court, as disclosed by its opinion, held, among other points decided by it, that upon the facts presented the relationship between Kamfner and Oscar Halberg was that of principal and agent and not of trustee and *cestui que trust*, and that equity would not assume jurisdiction to establish a trust in every case where mere confidence had been reposed or credit given. We deem it unnecessary to enter into a discussion of that principle and its applicability to the facts in this case. A decision of the rights of the parties may be reached upon other grounds. The checks heretofore mentioned appear to have been delivered to Oscar Halberg to be paid over by him to the Mokena State Bank as an initial deposit or down payment upon the purchase of the farm property, and he was to obtain an executed real estate sale contract from the owners covering the property purchased, and the bank's receipt for the first payment thereon, and deliver the same to Kamfner. Halberg did not do this but deposited the several checks in his son's account at the Auburn Park Bank. It is conceded by Kamfner's counsel that the deposit made by Halberg was a general one. In the case of a general deposit with a bank to the credit of the depositor the relation created is not that of principal and agent or of trustee and *cestui que trust* but is merely that of debtor and creditor. Such deposits belong to the bank and become a part of its general funds, and there is nothing but a liability as debtor to re-pay according to the customs and usages of the business. (*Wood-*

*house* v. *Crandall,* 197 Ill. 104; *People* v. *Farmers State Bank,* 338 id. 134.) Where bank deposits are made by an agent, factor or commission merchant, if the bank has knowledge or notice that the funds are the proceeds of a sale of property consigned to the depositor for sale it can not apply the deposit to the individual indebtedness of the depositor although the deposit is to his individual credit. (3 R. C. L. par. 222, p. 593; *Clemmer* v. *Drovers' Nat. Bank,* 157 Ill. 206.) In case of a deposit of fiduciary funds to the credit of the depositor, if the bank has no notice or knowledge of the fiduciary character of the funds, according to the prevailing view it is not deprived of the right to apply the deposit to the individual indebtedness of the depositor. (3 R. C. L. par. 222, p. 594.) In 2 R. C. L. (Perm. Supp. p. 849,) it is stated with reference to the foregoing principle: "The decided weight of authority is to the effect that where the bank in which funds in which third persons have an interest are deposited in the individual name of the depositor, has neither actual knowledge nor notice of facts sufficient to put it upon inquiry as to the true character of the deposit, it may apply the deposit to the individual debt of the depositor." The same quotation appears in 13 A. L. R. p. 327, as part of an exhaustive note upon the subject and where a wealth of authorities are cited supporting that doctrine. Supplementary annotations upon the same subject appear in 31 A. L. R. p. 757, and 50 id. p. 634. See, also, 7 Corpus Juris, par. 357, p. 659, and *Chicago Title and Trust Co.* v. *Central Trust Co.* 312 Ill. 396.

Counsel for Kamfner contend that even though the Auburn Park Bank had no notice of Kamfner's interest in the fund at the time the bank applied it to Oscar Halberg's indebtedness, Kamfner is entitled to recover the money deposited because the bank did not change its position as a result of or on the faith of the deposit and therefore no superior equities were raised in its favor. This is termed the Federal or equitable rule, and one of the leading cases

supporting that principle is *Bank of the Metropolis* v. *New England Bank,* 6 How. 212. A few States have adopted this rule in preference to the one previously stated in this opinion, and plaintiff in error asserts this court has endorsed and approved the equitable rule in *Russell* v. *Hadduck,* 3 Gilm. 233, and *American Exchange Nat. Bank* v. *Theummler,* 195 Ill. 90. We think this a misapprehension. The case of *Bank of the·Metropolis* v. *New England Bank* is cited and its principles are set forth in the *American Exchange Nat. Bank case.* The latter case is authority for the following proposition as set forth in the headnote of the case: "The possession by a bank of a draft endorsed in blank by the payee is *prima facie* evidence of the bank's ownership thereof, and if its correspondent to which it sends the draft for collection has no notice that the forwarding bank holds the draft merely as agent of the payee for collection, such correspondent may apply the proceeds of the draft to the reduction of an overdraft upon it by the forwarding bank, which has become insolvent, if such application is made before notice of the capacity in which the forwarding bank held the draft." We do not think this court is committed to the Federal or equitable rule in such cases, and this is apparent from the holding in *Chicago Title and Trust Co.* v. *Central Trust Co. supra,* that a bank may apply a deposit on a demand note though the deposit was a trust fund, where the bank was without notice as to the trust.

Under the facts presented by this record we think there is little merit in any of the other contentions of plaintiff in error, and in view of the conclusion reached by us it is not necessary to discuss them.

We are of opinion the conclusion of the Appellate Court was correct, and its judgment will therefore be affirmed.

*Judgment affirmed.*