(No. 27114.—

OTTO KERNER, Attorney General, *et al.*, *vs.* CARL D. KINSEY *et al.*—(GEORGE F. BARRETT, Attorney General, *et al.*, Appellants, *vs.* THE FIRST NATIONAL BANK OF CHICAGO, Appellee.)

*Opinion filed Sept. 21, 1943—Rehearing denied Nov. 11, 1943.*

GEORGE F. BARRETT, Attorney General, and THOMAS HART FISHER, (WILLIAM C. WINES, and NORMAN CRAWFORD, of counsel,) for appellants.

AMBERG, LIVINGSTON, KEARNS & DAHLIN, (JOHN W. KEARNS, FRANK L. PAUL, and RALPH J. MOHAN, of counsel,) for appellee.

182

MR. JUSTICE GUNN delivered the opinion of the court:

In October, 1933, the Attorney General of Illinois brought suit in chancery in the circuit court of Cook county against Carl D. Kinsey *et al.* to declare the sum of $100,000 paid to the Chicago Musical College by the executors of the will of one Charles H. Ditson a charitable trust, and to require an accounting by said Kinsey for a diversion of said funds from charitable purposes; and later in October, 1933, the complaint was amended by making the First National Bank of Chicago, the Northwestern Mutual Life Insurance Company and Stein Alstrin & Company defendants to make discovery and return of properties constituting a part of said charitable fund now held by any of them in the name or on account of the Chicago Musical College.

An answer was filed by Kinsey. The First National Bank answered disclosing the amount of cash in the checking deposits of Kinsey and Chicago Musical College. A preliminary decree was entered December 21, 1933, establishing a charitable trust, and a final decree June 30, 1941, finding the liability of Kinsey for diversion from said fund to the extent of $65,000, which has been paid and satisfied, and dismissed the bill as to all of the other defendants including the First National Bank of Chicago. The Attorney General and Rudolph Ganz, successor trustee, appealed to the Appellate Court for the First District because the First National Bank was not held liable for $35,000. The Appellate Court affirmed the circuit court of Cook county, and we have allowed an appeal to this court.

The pleadings are somewhat involved, but are fully set out in the opinion of the Appellate Court, (316 Ill. App. 416) and there is no necessity to restate them. The facts out of which the controversy arises are substantially as follows: The Chicago Musical College was a business corporation organized under the laws of Illinois, and all of its stock, except qualifying shares, was owned by Carl

D. Kinsey, who was the president thereof. Charles H. Ditson, a resident of New York, died in 1929, and by his will devised to Chicago Musical College and seven other schools each $100,000 to be used in maintaining and establishing a chair or chairs of music, or in maintaining scholarships or fellowships in music and other like purposes, such fund to be known as the Oliver Ditson Endowment. May 12, 1931, the executors of Charles H. Ditson estate made and delivered a check for $100,000 payable to the Chicago Musical College, and May 19, 1931, Carl D. Kinsey endorsed the name of Chicago Musical College by himself, as president of the corporation, payable to himself, and endorsed the check personally, and had it deposited to his own credit in the First National Bank of Chicago. June 22, 1931, the Chicago Musical College opened an account in the First National Bank of Chicago. January 9, 1932, the Chicago Musical College borrowed of the First National Bank of Chicago $35,000 and executed its note therefor, which was renewed from time to time. January 25, 1932, Kinsey withdrew from his personal account $80,000 and deposited it to the credit of the Chicago Musical College. Kinsey later purchased with this money a certificate of deposit for $80,000 in his own name; but later, July 29, 1932, endorsed this certificate and deposited it to the credit of the Chicago Musical College, and the next day, July 30, 1932, the $35,000 note was paid by the bank withdrawing the amount due on the note from the deposit account of the Chicago Musical College. No objection was then nor thereafter made by the Chicago Musical College, nor is there anything in the record to disclose that the First National Bank of Chicago had any knowledge that the $100,000 check, made payable to the Chicago Musical College, was impressed with a charitable trust.

The complaint filed by the Attorney General in October, 1933, resulted in a preliminary decree, entered December 21, 1933, in which it was declared the fund de-

vised by the will of Charles H. Ditson was for charitable purposes. The form of the decree made certain other findings required by additional developments arising out of the corporate structure of the Chicago Musical College. November 22, 1933, its name was changed to C.D.K., Inc., and a new corporation organized under the Illinois Business Corporation Act under the name of Chicago Musical College. This latter company will be hereafter referred to as the new company.

In its preliminary decree, after declaring the Ditson legacy was a public charitable trust, the court designated Rudolph Ganz as successor trustee; found that Kinsey was the president and owner of all of the stock of the Chicago Musical College, except directors' qualifying shares; also provided for the organization of the new company under the Ganz management, and its succession to all assets of the Chicago Musical College (now C.D.K., Inc.), subject to the claim of the Attorney General to impress with the trust $100,000 of value of such assets. The decree also approved the transfer by the new company to Ganz, trustee, of $172,600 face value of mortgages and bonds, subject to the right of the new company to the excess realized over the sum of $100,000, and directing the new trustee to apply the proceeds of the trust funds to the purposes of the Ditson legacy. Jurisdiction was reserved to enter orders for the investment and administration of the trust fund.

After this decree was entered numerous documents were exchanged between Chicago Musical College (now C.D.K., Inc.), the new company, Ganz, as trustee, and Kinsey, in connection with the carrying out of the decree and the reorganization of the Chicago Musical College. Thereafter Ganz, as trustee, made several reports, and April 6, 1939, showed that out of the securities turned over to him he had realized approximately $44,000 in cash, and had on hand securities of the face value of $109,000,

with approximate cash value of $52,000. The old company (C.D.K., Inc.) in addition to transferring mortgages and bonds also turned over to the new company all of the chattel property in consideration of certain payments, making the face value of all property transferred, including the mortgages, slightly in excess of $275,000.

June 30, 1941, the final decree was entered in the case in which the court found that Carl D. Kinsey had appropriated to his own use the sum of $65,000 from the public charitable trust known as the Oliver Ditson Endowment, and that Kinsey had made restitution to the successor trustee by the delivery of the property mentioned in the decree of December 20, 1933, and that Kinsey was entitled to a decree fully satisfying all liability and obligation to said charitable trust. The decree dismissed the bill of complaint as to all other defendants, including the First National Bank of Chicago and the Chicago Musical College (C.D.K., Inc.,) for want of equity. It is from this latter decree that appeal was taken by the Attorney General, contending he was entitled to judgment against the First National Bank of Chicago for the sum of $35,000 and interest not only upon it, but also upon the $65,000 during the time it was retained.

The theory upon which appellants prosecute their appeal is that, the transaction by which Kinsey in the first instance caused the check for $100,000 to the Chicago Musical College to be deposited in his account being irregular, and one upon which the Chicago Musical College could have recovered from the bank, it then became entirely immaterial whether the bank knew the funds represented by the check were impressed with a charitable trust, or whether it merely had reason to suppose the president was converting the funds of his corporation; that the bank having notice a misapplication was involved so far as the Chicago Musical College was concerned, it thereupon became liable for the reimbursement of the

charitable trust fund without regard to whether it was liable to the corporation, or whether the corporation had released the liability or ratified the transaction.

While this is the general position of appellants it is not clear whether they are attempting to recover because of the collection of the $35,000 note by reducing the account of the Chicago Musical College, or because of the fact that appellants recovered only $65,000 from Kinsey, the man who was responsible for the original conversion. Appellants rely upon authorities in which a bank was held liable for cashing the checks of one admittedly a trustee, or where the action was brought by the corporation whose officer had, without proper authority, converted its funds. Thus *Massachusetts Bonding and Ins. Co.* v. *Standard Trust and Savings Bank,* 334 Ill. 494, was a suit in which a bank was charged with cashing a receiver's check payable to himself as an individual and not as a trustee. *Cushman* v. *Illinois Starch Co.* 79 Ill. 281, was a case where the bank was held liable for funds taken from the account of the corporation by its treasurer and deposited to the latter's individual account. And *Leigh* v. *American Brake-Beam Co.* 205 Ill. 147, involved the loan of corporate funds to the president of the company without authorization of its board of directors. These are all cases in which the ownership of the funds on deposit was disclosed and the bank permitted them to be appropriated for the use of the corporate officer, upon no other authority than that of the corporate officer involved.

The point is that in each case cited the actual ownership of the fund was known, and complaint was made by the actual owner, and liability was predicated upon the fact being sufficient to give the bank notice that a corporate officer was without authority getting possession of corporate funds. Such facts are not present in this case. The Chicago Musical College was a business corporation, and all of its stock was owned by Charles D. Kinsey.

The fund paid to the corporation was by executor's check, and did not in any way indicate or give notice that the Chicago Musical College was to receive the money in a trust capacity. Had the bank speculated upon the subject it could, with equal propriety, have considered it as an outright gift to the corporation, or as the payment of a debt, owed by the deceased, or something arising out of a contract arrangement. In the form in which the check was presented to the bank for deposit it had a right to consider the Chicago Musical College owned said fund, and had it been deposited in the first instance to the account of said company there could be no liability upon the part of the bank for paying out said funds, upon proper checks, of the Chicago Musical College through its proper officers. The fact the check was signed by executors did not give the bank any notice a trust fund was involved. *Morris* v. *Preston,* 93 Ill. 215; *State National Bank* v. *Reilly,* 124 Ill. 464; *Bradwell* v. *Pryor,* 221 Ill. 602.

As pointed out above, however, the money was not immediately deposited to the account of the Chicago Musical College, but was deposited to the account of its president in his individual capacity. Had the corporation seen fit to bring action against the bank the authorities cited by appellants would be applicable, provided the contention that a one-man corporation is not subject to the same rule as corporations generally is sound. It is not necessary, however, to go into this question. A few days after the deposit of this check the Chicago Musical College opened an account. It was the owner of considerable assets aside from the money represented by the legacy. As a business corporation it borrowed $35,000 of the bank January 9, 1932, which from time to time was renewed, and when on July 25, 1932, a deposit was made by Carl D. Kinsey to the account of the Chicago Musical College in the amount of $80,000 the bank had the right to pay

188

the note by charging the corporation account with the amount due thereon and cancelling it. The authorities in this respect are well settled. (*Chicago Title and Trust Co. v. Central Trust Co.* 312 Ill. 396, 482; *Kamfner v. Auburn Park Trust and Savings Bank,* 344 Ill. 200.) It is said, in the last cited case, that where the one who is indebted to a bank presents a negotiable instrument to the bank and receives credit on his deposit account therefor, and the proceeds are applied to the payment of the debt by the bank, it is a holder in due course. Therefore it would seem clear the Chicago Musical College having borrowed $35,000 presumably for a legitimate purpose, and having deposited to its account the sum of $80,000, without any indicia disclosing the money did not belong to the Chicago Musical College, the bank would be entirely within its rights in offsetting a sufficient amount of the deposit to pay the note.

It is somewhat of a coincidence that in its final decree the court made a finding that the assets of the Chicago Musical College turned over by Kinsey to Rudolph Ganz, the successor trustee, were of the value of $65,000. The court also found Kinsey converted $65,000 of the money due to the charitable trust, and it is apparently the theory of appellants that since the gift was $100,000, and Kinsey only reimbursed the trust to the extent of $65,000, that therefore the bank is, nevertheless, liable without regard to whether the amount of the shortage, being the same as the amount of the note, is only a coincidence, or whether the court improperly allowed the bank to repay the obligation to it by withdrawing from the funds of the Chicago Musical College before it had first required Kinsey to reimburse the Chicago Musical College to the full extent of $100,000.

The contention of appellants first above referred to is that the bank having acted improperly in permitting the

president of the company to deposit corporate funds in his own name, this action upon its part renders it liable if it be afterwards discovered the fund of the corporation was in fact impressed with a trust. Or perhaps, to make it a little more clear, if the Chicago Musical College could have maintained a suit, then the undisclosed owner of the fund apparently belonging to the Chicago Musical College could maintain a suit, without any further foundation than that the transaction rendered the bank liable to the corporation whose officer had diverted the fund without its authority. This position does not take into consideration the rights which exist between the corporation and its officer. If it should appear the corporate officer, through the negligence of the bank, defrauded the corporation, but later reimbursed his company by payment, it is clear the corporation could not recover from the bank because it had suffered no injury. If, upon the other hand, the corporation was indebted to the officer who was responsible for the conversion of the fund, through the negligence of the bank, and such officer made his settlement with his corporation by paying the difference between what he had improperly withdrawn and what was due and owing to him, it would seem equally clear no action would lie against the bank, because in an independent transaction involving other considerations the whole liability of the person guilty of the conversion has been satisfied.

We have been referred to no authority which holds a cause of action against a bank, because of the improper recognition of the act of a corporate officer in withdrawing corporate funds, may be the basis of an action in favor of an unknown person who had a claim against either the corporate officer or the corporation itself. The basis of liability of a bank is knowledge of facts sufficient to put it on notice that it is paying out the money

of one to another without proper authority, and this court in *O'Neal* v. *Boone,* 82 Ill. 589, held in substance that such unknown third party could not recover under such circumstances.

The suit was brought by the Attorney General more than two years after the check was deposited in the First National Bank, and more than a year after it had withdrawn from the account of the Chicago Musical College the money to pay its note, and in the original bill no complaint was made against the bank. As a matter of fact, preliminary to the decree of December 21, 1933, the Chicago Musical College transferred most of its assets, *viz.,* $172,600 in securities to Ganz, trustee, to secure the payment of the $100,000 trust legacy, and the balance of its property to the new corporation reorganized by Ganz. This left the original Chicago Musical College without assets.

The record also shows Ganz, trustee, had received either in cash or in property $96,000 on account of the trust fund. The court found the amount actually converted by Kinsey was $65,000, that he had repaid this amount, and that the bank should be dismissed out of the case. We think this conclusion is entirely sound. We do not subscribe to the contention made by the appellants that even admitting the bank negligently permitted the original deposit of $100,000 to Carl D. Kinsey, this fact alone gave any notice the fund was impressed with a trust, or that this fact by itself could create liability upon a court subsequently decreeing the money was in fact held by Chicago Musical College in trust. To so hold would seriously militate against the stability of commercial transactions involving commercial paper.

While the bank might be liable to the corporation for negligently permitting its officers to deposit corporate funds in the officer's name, yet this is a claim which can be main-

tained only by the corporation itself, and it likewise has the full power to discharge such liability. And when the liability is discharged it cannot be again revived by the proof that in fact the money involved was so held by the apparent owner in trust, unless notice of such undisclosed ownership is made. So far as the record shows the Chicago Musical College has not made any claim; has not denied the $35,000 loan was for value received. No notice of defect in the title to the money deposited has been shown, and the record discloses Carl D. Kinsey, the only principal liable, has discharged his full debt by reimbursing the fund to the full amount it was depleted. There is no foundation for the contention that a depletion of the fund was caused by the $35,000 loan, because when the loan was made the Chicago Musical College had that much more money, and when it was paid it was in the same financial condition, so far as the acts of the bank were concerned, as it was at its inception.

The questions argued by counsel are somewhat involved, and while numerous authorities are cited, they have little application to the facts presented. On principle, before a bank can be charged with negligence, it must have knowledge of facts sufficient to put it upon notice, and when it does become liable it is only to one who, under the settled doctrine of commercial law, is the legal holder, and not to unknown parties in interest, who have hidden equities not disclosed at the time of the transaction.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*