The Board of Education of School District No. 148, Cook County, Illinois, a Municipal Corporation, and the Board of Education of School District No. 157, Cook County, Illinois, a Municipal Corporation, Plaintiffs-Appellees, v. The County of Cook, et al., Defendants-Appellants.

**Gen. No. 48,837.**

First District, Third Division.

June 12, 1963.

Daniel P. Ward, States Attorney of Cook County, of Chicago (Thomas A. Hett, Edward J. Hladis, James J. Glasser, and Francis X. Riley, Assistant State's Attorneys, of counsel), for appellants.

Ronald J. Crane, Arthur E. Dillner, Joseph P. Griffin and Harold L. Summerfield, of Chicago (Ronald J. Crane, Arthur E. Dillner, and Harold L. Summerfield, of counsel), for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The Boards of Education of two Cook County school districts brought this representative class action against the County of Cook, the members of the Board of County Commissioners and the County Treasurer to recover interest earned on certain of the tax funds of various school districts of Cook County during the period from December 1953 to December 1958. The defendants acknowledged that interest was earned on these funds but contended it belonged to the County. The trial court held that the interest belonged to the school districts and ordered that an accounting be made and the interest distributed. The defendants appealed to the Supreme Court because a question of revenue was involved, but the case was transferred to this court.

The plaintiffs' claim was grounded on a statute which was in effect during the years mentioned. Ill Rev Stats (1957), c 36, § 29. This section has not been construed in any previous case and any construction we place upon it, although of consequence to the present parties, will be of limited importance. The orders of the court were entered in October and December 1960. In 1961 the State legislature amended the stat-

ute and eliminated the provision which was the basis for the plaintiffs' claim. The statute follows:

"The county treasurer shall make to the county clerk an annual report, under oath, of all interest received by the county treasurer or credited to the county treasurer by any bank or other depositary, in which is deposited any county moneys, and at the time of making such report the county treasurer shall pay into the county treasury for the benefit of the county, except as hereinafter provided, the aggregate amount of all interest so received by or credited to him, as shown by said report, provided, that of the moneys so received by or so credited to the county treasurer as interest on the balances maintained by him, the county treasurer shall pay to each school district in the county, such portion of said interest as the total of school taxes of such school district bears to the entire amount of taxes collected and not paid over; it being the intention of this Act to have all moneys earned as interest on school funds, in the hands of the county treasurer, credited to and paid over to the school district entitled to the same, instead of to the general county fund."

The agreed facts are substantially these: tax moneys were collected by the County and credited to the various taxing bodies in an account called "Taxing Bodies Control Account." A portion of the tax money in this account was subject to taxpayers' objections; in order to provide a fund for the repayment of valid objections, a separate account entitled "Tax Reserve Account" was set up. Certain sums were transferred from the "Taxing Bodies Control Account" to the "Tax Reserve Account" and there credited to the names of the particular taxing unit.

93

A portion of these funds was that of the school districts.

The "Tax Reserve Account" was maintained at a bank. During the years in question the County Treasurers instructed the bank to purchase 90-day United States Government notes with the money in the "Tax Reserve Account." When the notes came due the principal was credited to the "Tax Reserve Account" but the interest earned on the notes was not. The interest was deposited for the benefit of the County in another account called the "General County Fund." This procedure continued until May 1959 when the County Treasurer, who took office in December 1958, distributed the interest to Cook County school districts. This was the first time such a distribution was made. It apparently alerted the school districts to what had been taking place and triggered the present complaint.

The defendants contend that placing funds in Government notes was an investment and that section 29 does not apply to interest earned on funds that are invested. They point out that section 29 refers only to interest received by the County Treasurer from "any bank or other depositary" and that the entire act (c 36, §§ 17–41) speaks in terms of deposits, banks and depositories. They contend that the treasurer has the inherent power to invest County funds, that there is no statutory provision requiring distribution of interest which is earned on investments to school districts and that, absent statutory direction to the contrary, interest from investments is to be deposited in the "General County Fund" for County purposes.

■ ■ The distinction between a deposit and an investment is not always too clear. Generally, in terms of money, a deposit is the placing of money in a bank for safekeeping; an investment is the placing of money in some form of property for income or profit. But it has been held that deposits in banks are in-

vestments (State v. Marron, 18 NM 426, 137 P 845) and it has been held that they are not investments (State v. McFetridge, 84 Wis 473, 54 NW 1). Much depends upon the purpose and intention of the individual who places the money. What may be a deposit to one person could be an investment to another. One person might regard a savings account, which pays interest, as an investment as well as a deposit. Another might regard the bonds, bills or notes of the United States Government as greater security for his funds than a bank, more as a place for their safekeeping than as an investment. Certainly, the Treasurer of Cook County, whose number one obligation is the safekeeping of public funds (Ill Rev Stats 1957, c 36, § 4; County of Lake v. Westerfield, 273 Ill 124, 112 NE 308), must have considered the safety of those funds as of more importance than the income to be derived from them.

The language of section 29 is so plain that construction is unnecessary. There is no need for hairsplitting over "investments" and "deposits." The statute says:

> ". . . it being the intention of this Act to have all moneys earned as interest on school funds, in the hands of the county treasurer, credited to and paid over to the school district entitled to the same, instead of to the general county fund."

██ The aim of statutory construction is to ascertain the legislative intention by examining the language employed and the objective sought to be accomplished. People v. Gill, 30 Ill App2d 32, 173 NE 2d 568; People v. LaPorte, 28 Ill App2d 139, 171 NE2d 95. Section 29 states the intention of the legislature in unequivocal language. The objective sought to be accomplished is singularly clear. It was to credit the school districts with "all moneys earned as

95

interest on school funds." These words must be read as meaning that interest earned on school money in whatever depository it was placed, must be paid over to the school districts. We do not believe the legislature intended to exclude interest earned on school money placed in securities of the Treasury of the United States, the greatest depository within our monetary system.

The judgment of the Superior Court is affirmed.

Affirmed.

SCHWARTZ and McCORMICK, JJ, concur.