MID-CITY NATIONAL BANK OF CHICAGO, Plaintiff-Appellant, *v.* MAR BUILDING CORPORATION *et al.,* Defendants-Appellees.

(No. 60589;

First District (2nd Division)—November 4, 1975.

*Rehearing denied December 17, 1975.*

Warren E. King and Howard M. Brandstein, both of Chicago, for appellant.

M. C. Elden, of Chicago, for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

The case before us is a controversy between a bank and a corporate depositor concerning the right of the bank to apply money on deposit to a debt that had been guaranteed by the depositor and which had become due. This controversy arose when the depositor, in a foreclosure proceeding, filed a petition asking the court to order return to the depositor of money which the bank had applied to the defaulted debt. The trial court ruled that the bank could not apply the money to the debt and ordered it returned to the depositor. The issue presented is whether this ruling was correct.

On April 5, 1967, Mar Building Corporation executed a mortgage of real estate to secure the payment of a $400,000 note. Brothro Food Products Co., Inc., and M. Rothschild & Sons, Inc., associated Illinois

corporations, guaranteed the payments. The mortgage, the note and the guaranty were signed for the three corporations by the same persons, Carl M. Rothschild and Edwin Pizer, holders of the same offices in each corporation, namely, president and assistant secretary, respectively. The mortgage note provided, among its terms, that "[t]he makers, sureties, guarantors and endorsers of this note, jointly and severally, hereby waive notice of and consent to any and all extensions of this note or any part thereof without notice, and each hereby waives demand, presentment for payment, notice of non-payment and protest, and any and all notice of whatever kind or nature and the exhaustion of legal remedies hereon." In their guaranty, it was stated for the two guarantor corporations that "[f]or value received, the undersigned hereby absolutely and unconditionally guarantee the prompt payment of the within note and the interest thereon mentioned or provided for, or at any time or. times thereafter and hereby waives [*sic*] presentment, protest, notice demand or action on delinquency, in respect of such indebtedness." The note contained the usual terms allowing acceleration of the unpaid balance in the event of default.

Accordingly, on February 20, 1974, because of nonpayment, Mid-City National Bank of Chicago, mortgagee and holder of the note, declared that the entire principal balance was due. Then, on March 11, 1974, it filed a complaint to foreclose the mortgage, alleging that the sum in default was $171,383.36, plus $8,762.93 for interest to date. The defendants named in the complaint were the mortgagor, Mar Building Corporation, and the two guarantors, Brothro Food Products Co., Inc., and M. Rothschild & Sons, Inc. Summons issued; and they were to appear and file an answer.

Before doing this, however, a five-paragraph petition was filed in which Brothro Food Products Co. and M. Rothschild & Sons alleged that after the suit to foreclose was begun, Mid-City National was the custodian of $70,000 that belonged to Brothro, an amount which had been deposited with the bank "* * * for safekeeping and in a pension fund * * *"; that the mortgage loan which they had guaranteed had not matured nor become defaulted; and that neither they, nor any of them, had authorized the bank to take the $70,000 and apply it to the loan which was the subject of the foreclosure. Therefore, they prayed for an order directing the bank to return the money and pay them reasonable attorneys fees; and that the court give them such other and further relief as in equity may seem just.

Mid-City National answered the petition and admitted that it had not been authorized to apply the $70,000 to the defaulted note. It denied, however, that Brothro had deposited the money in a pension fund, and

that the note in question was in good standing. The bank alleged that this note became defaulted on February 20, 1974; and in accordance with the note, it had declared the entire principal balance immediately due and payable.

Then, in seven detailed paragraphs, the bank affirmatively alleged that the corporations involved in the $400,000 loan, Mar Building, M. Rothschild & Sons and Brothro Food Products Co., were "straws" or "dummies" owned and controlled by a Carl M. Rothschild, organized by him for the purpose of concealing assets and defrauding creditors; that in addition to these corporations, Rothschild, for the same purpose, owned and controlled five other corporations; that Mar Building Corporation, the mortgagor, was hopelessly insolvent because its accounts receivable were owned by one or more of Rothschild's dummy corporations; that the mortgaged real estate had no value because necessary repairs exceeded its worth; that Brothro was indebted to Mar Building, but these debts had existed for some time and were created by Rothschild to withdraw assets from Mar Building and thus hinder its creditors, particularly Mid-City National Bank; that M. Rothschild & Sons occupied the entire mortgaged premises, had sublet parts of it, but did not pay any rent to Mar Building; that Rothschild had attempted to divert assets of Brothro Food Products, and those of M. Rothschild & Sons, in order to benefit his son, Jeffery Rothschild; that if the $70,000 at issue were released, the bank feared it would be used to benefit Rothschild's family, or for preferential payments to the corporations he controlled.

The bank continued its answer with allegations that it had served a notice and a notary subpoena on Rothschild requiring him to appear for a deposition two days before the answer was filed; that Rothschild was requested to produce certain documents and statements which were necessary for the bank to show that all the corporations it had named in its answer were "straw" corporations owned and controlled by Rothschild; that he appeared at the deposition but failed to produce the documents and statements; that these, and an audit of them, were necessary for the bank to show the intercompany transactions and the concealment of funds in which Rothschild had engaged; and that all of these facts were necessary for the bank to prove the allegations contained in its answer concerning the $70,000 deposit. Therefore, the bank prayed that the court find the two guarantor corporations were the *alter egos* of the mortgagor, Mar Building Corporation; that the three corporations involved in the $400,000 loan were organized by Carl M. Rothschild for inter-company manipulation of funds aimed at hindering and defrauding creditors, more particularly, Mid-City National Bank of Chicago; that in addition to application of the $70,000 by way of set-off or by way of

a possessory lien to the defaulted debt, Rothschild be ordered to produce all books, records and documents requested in the notice of deposition and the notary subpoena; and that the cause be continued in order to give Mid-City National the opportunity to audit and examine the books and records to be produced by Rothschild.

The day after this answer was filed, the matter was before the court for hearing. Counsel for the bank asked for a continuance because, he said, Rothschild, on advice of his counsel, had refused to answer certain questions asked of him at his deposition. The court was told that the questions and Rothschild's refusals were being certified by the notary public before whom Rothschild had appeared. The continuance was denied, with the trial judge announcing that he was going ahead with the hearing because there were no questions of fact to be decided; only questions of law were involved.

Counsel then requested an opportunity to offer evidence in support of the allegations contained in the bank's answer. The request was refused. In an attempt to press the matter, counsel called the trial judge's attention to the issues which had been raised by the petition and the answer, particularly, the affirmative allegations concerning the intercorporate dealings involving the three corporations connected with the $400,000 loan. The judge rejected the assertions, saying, "The issue before me is solely whether or not a guarantor on a note who has money on deposit in a bank but which money has not been pledged or mortgaged is subject to having said money confiscated by the holder and applied in a note without first proceeding in a separate action against the guarantor or in attempting to pierce the corporate veil." A colloquy between court and counsel followed; and then the trial court announced it was ruling in favor of Brothro Food Products Co. and entered an order directing Mid-City National Bank to return the $70,000 it had applied to the defaulted debt.

After this order, but before the bank filed its notice of appeal, Mar Building, M. Rothschild & Sons and Brothro Food Products, filed a sworn joint answer which was signed by Carl M. Rothschild for the three corporations. At the same time, Brothro and M. Rothschild & Sons filed a two-count counter complaint which alleged, in one count, that on or about March 21, 1974, Brothro "* * * owned and was entitled to a certain certificate of deposit which matured then and there on said date in the sum of $70,000.00 which sum of money was on deposit with * * * Mid-City National Bank of Chicago * * *." This countercomplaint was made a part of the record on appeal. In this court, Brothro has moved to strike this pleading from the record on the ground that it was filed after the trial court ordered the return of the $70,000. We took this

motion with the case. And for the following reasons, we sustain it and strike the countercomplaint because in our judgment it is not properly a part of the record on appeal.

A reviewing court may strike from the record on appeal all matters which are not properly a part of the transcript. (*Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392; 2 Ill. L. & Pr. *Appeal & Error* § 467 (1953).) Ordinarily, an appeal record consists of all pleadings and proceedings to and including the judgment, but ends with the judgment itself. (*People ex rel. Edgar v. Board of Review*, 263 Ill. 326, 105 N.E. 128.) Matters not properly a part of the record will not be considered by a reviewing court although they may otherwise appear. Compare *Iczek v. Iczek*, 42 Ill.App.2d 241, 191 N.E.2d 648.

■■ Where, for example, the appeal is from an order that granted a third-party defendant's motion for judgment on the pleadings, matters in the record not related to the third-party complaint will be stricken on motion made in the appellate court. (*Baillon v. S. S. Kresge Co.*, 4 Ill.App.3d 82, 277 N.E.2d 719.) This is so because reviewing courts resolve issues from the posture of the record at the time the trial court entered the order or renders the judgment from which the appeal is taken. (See *Pritchett v. Steinker Trucking Co.*, 108 Ill.App.2d 371, 247 N.E.2d 923; *John Deere Company v. Hinrichs*, 36 Ill.App.2d 255, 183 N.E.2d 309; *Di Paola v. Seppala*, 336 Ill.App. 344, 83 N.E.2d 889; compare *In re Garmon*, 4 Ill.App.3d 391, 280 N.E.2d 19.) Therefore, in disposing of this appeal, we will not consider a countercomplaint that was filed after the order appealed from was entered. *Goldblatt Bros. v. Sixty-Third & Halsted Realty Co.*, 338 Ill.App. 543, 88 N.E.2d 100.

Turning, then, to the record as it reflects the case when the trial court entered the order appealed from, we find that it consists of the petition filed by the two guarantor corporations, the bank's answer, and the report of the proceedings on the day the order was entered. It appears to have been the bank's contention that its answer raised questions of fact which entitled it to a hearing and an opportunity to introduce evidence. It was Brothro's contention, one apparently agreed with by the trial judge, that there were no questions of fact; there was only an issue of law before the court.

■■ In this appeal, Brothro concedes the rule that the guarantor of a note like the one in this case becomes a debtor when there is a default of the note. (*Borden v. Berg* (1965), 232 Cal.App.2d 169, 42 Cal.Rptr. 664; *Jeppesen v. Rexburg State Bank* (1936), 57 Idaho 94, 62 P.2d 1369; see *Page Trust Co. v. Wachovia Bank & Trust Co.* (1924), 188 N.C. 766, 125 S.E. 536.) It also concedes that if it were indebted to a bank which

had $70,000 of its money in a general deposit, the bank could apply the money to the debt. (*Kerner v. Kinsey*, 384 Ill. 180, 51 N.E.2d 126; *In re Estate of Temple*, 131 Ill.App.2d 434, 266 N.E.2d 438 (abstract opinion).) However, Brothro argues that its petition alleged the $70,000 was deposited "* * * for safekeeping and in a pension fund * * *," but the bank did not deny the allegation that the deposit was for safekeeping; it denied only that the money was deposited in a pension fund. A deposit for safekeeping, Brothro insists, is a special deposit which is not subject to the rule that a bank can apply money on deposit to satisfy a debt of the depositor. This argument requires us to decide whether the petition alleged facts which would have established that the $70,000 in question was a special deposit.

■■ In the relation of bank and depositor, there is a well-established distinction between a general and a special deposit. A general deposit is one in which a bank merely becomes the debtor of the depositor. (*People ex rel. Russell v. Farmers State & Savings Bank*, 338 Ill. 134, 170 N.E. 236.) A general deposit makes the money deposited a part of the bank's general fund and makes the bank a debtor. (*Kamfner v. Auburn Park Trust & Savings Bank*, 344 Ill. 200, 176 N.E. 363.) As a rule, when money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit; and to that extent, the depositor becomes a creditor. (*People ex rel. Russell v. Farmers State & Savings Bank*, 338 Ill. 134, 170 N.E. 236.) A deposit is a general one even when it is evidenced by a certificate of deposit. *Mutual Accident Association v. Jacobs*, 141 Ill. 261, 31 N.E. 414; *Washington County v. Stephens* (1928), 46 Idaho 224, 267 P. 225; *Maryland Finance Corp. v. People's Bank of Keyser* (1925), 99 W.Va. 230, 128 S.E. 294; 5B Michie on Banks and Banking § 313 (1950).

■■ A special deposit is the delivery of either money or chattel to a bank under a special agreement, or under circumstances sufficient to create a trust. (*People ex rel. Auditor of Public Accounts v. West Side Trust & Savings Bank*, 376 Ill. 339, 33 N.E.2d 607; *Baiar v. O'Connell*, 284 Ill.App. 331, 1 N.E.2d 805.) In the case of a special deposit, there is an agreement, either express or implied, that the money or chattel is to be returned intact on demand. The deposit is for some specific purpose not contemplating a credit or a general account. A special deposit is one for safekeeping; and the depositor is entitled to the return of the identical money or thing deposited. (5B Michie on Banks and Banking 230 (1950); Encyclopedia of Banking and Finance 179 (rev. 2d ed.).) In such a case, instead of creating the relation of debtor and creditor, the deposit creates a bailment; it sets apart the specific money or chattel

for its return on demand. *Schofield Manufacturing Co. v. Cochran* (1904), 119 Ga. 901, 47 S.E. 208; 1 Morse, Banks & Banking §§ 191, 193 (6th ed.).

■■ As far as we can determine, no reviewing court of this State has ever construed the words "deposited for safekeeping." However, in every Illinois case where this expression is involved, it is said that the identical thing deposited was to be returned. (See *People ex rel. Nelson v. Chicago Bank of Commerce*, 371 Ill. 396, 21 N.E.2d 303; *Green v. Ashland Sixty-Third State Bank*, 346 Ill. 174, 178 N.E. 468; *People ex rel. Nelson v. Home State Bank*, 338 Ill. 179, 170 N.E. 205; compare *Board of Education v. County of Cook*, 42 Ill.App.2d 91, 191 N.E.2d 444.) The cases of other jurisdictions emphasize that the *sine qua non* of a deposit for safekeeping is agreement, express or implied, for the return of the identical subject of the deposit. (See *Bright v. Hood* (1938), 214 N.C. 410, 199 S.E. 630; *First-Mercer National Bank v. Tewmey's Assignee* (1932), 246 Ky. 139, 54 S.W.2d 672.) Therefore, in pleading a special deposit, more has to be said than that it was made for safekeeping. "All deposits, general or special, made in banks, are placed in banks for 'safekeeping,' and so the averment in the petition that the money deposited by the agent of appellant was 'to be held for safe-keeping until the end of the week' has no particular significance. * * * The petition in this case does not aver that the identical money deposited was to be kept and paid over * * *. We think this averment fails to fasten on the money deposited the distinctive feature of 'special deposit' or bailment." (*Mississippi Central R.R. Co. v. Conner* (1917), 114 Miss. 63, 75 So. 57, 58; see Annot., 59 A.L.R. 448 (1929).) We are constrained to the same conclusion in this case.

■■ The allegation concerning the $70,000 on which Brothro relies is that the sum had been "* * * deposited with the [bank] * * * for safekeeping * * *." In our judgment, this does not allege a special deposit. In fact, even the agreement of a bank to accept funds for "safekeeping" is not sufficient to stamp the funds a special deposit. (*Pacific States Savings & Loan Co. v. Commercial State Bank* (1928), 46 Idaho 481, 269 P. 86.) It follows that the failure of Mid-City to deny this allegation did not admit that the $70,000 was held in a special deposit. The failure to deny an allegation admits only facts well pleaded. *Roth v. Roth*, 45 Ill.2d 19, 256 N.E.2d 838; *Bratkovich v. Bratkovich*, 34 Ill.App.2d 122, 180 N.E.2d 716.

■■ Therefore, we conclude that the pleadings before the trial court when it ordered return of the $70,000 did not permit ruling on the issues as a matter of law. The bank's answer raised factual questions: concerning the loan, whether it was in good standing or in default; the $70,000,

whether it was a general or special deposit; the three corporations, whether one or all of them were the primary obligors under the mortgage note; the role of Carl M. Rothschild, whether he, in fact, was the obligor under the note and owner of the money claimed to have been deposited by Brothro Food Products Co. Also, since his deposition bore on the issues to be resolved, the bank was entitled to a hearing on the questions concerning Rothschild's refusals to answer questions and produce documents.

For these reasons, it is our judgment that the trial court erred in the order which required Mid-City National Bank to return the $70,000 to Brothro Food Products Co. A ruling on the issues raised by the petition and the bank's answer could not be made until the parties had been given an opportunity to introduce evidence in support of their respective contentions. Therefore, the order is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

DOWNING, P. J., and STAMOS, J., concur.